1817.

*Philadelphia.*    The Commonwealth *ex rel.* CRISPIN *against* JONES.

*Monday,*       *HABEAS CORPUS.*
*July 10.*

In the binding of an infant apprentice by overseers of the poor, it is not necessary that the infant should join in the indenture. The assent of the parties necessary to give validity to an assignment of an indenture of apprenticeship, must be certified by the justice, or at least expressed in writing before him, and attached to the instrument at the time of such assignment. Parol proof afterwards will not suffice. On an assignment of an indenture of apprenticeship executed by the overseers of the poor, the assent of the parent or guardian is necessary.

George Crispin, the relator, on the 27th *December,* 1801, being a poor child, was bound by the overseers of the poor of the township of *Lower Dublin* in *Philadelphia* county, as an apprentice to *Jacob Miles,* for the term of 17 years, from the 13th *January,* 1802. *Miles,* on the 4th *May,* 1814, in consideration of 60 dollars, assigned the indenture to *Joshua Jones,* the defendant, in the presence of *Thomas F. Gordon,* a justice of the peace of *Philadelphia* county. At the time of the assignment, *Crispin* had a father and mother living within two miles of the defendant, who did not appear to have had any knowledge of this assignment until some time after it took place. No certificate of the assent of *Crispin* was indorsed on or attached to the assignment at the time it was executed, but a certificate of the justice, to that effect, was produced on the hearing, dated the 20th *June,* 1817; and the justice himself was offered, and proved, "that *Crispin* was present at the assignment and assented to it. The discharge of *Crispin* was now claimed on three grounds. 1. That the original binding was void, because *Crispin* had not joined in the indenture. 2. That there was no legal evidence of his assent to the assignment. 3. That his parents did not assent to the assignment.

*Kittera,* for the relator.

1. By the act of 29th *September,* 1770, sect. 1,(a) the person is to be bound by indenture, to serve as an apprentice, " with the assent of the overseers of the poor." The apprentice must make the indenture; it is his covenant. It is true, the act of 9th *March,* 1771, sect. 8,(b) enables the overseers " to put out as apprentices, all such poor children " whose parents are dead, or shall be found unable to main- " tain them." But this act does not repeal the former one; nor was it intended to alter the mode of binding. The words, " put out," may also extend further than a binding ;

(a) 1 *Smith's Laws,* 302.          (b) 1 *Smith's Laws,* 332.

they may mean putting out for support. Both laws ought to stand.

1817.

The Commonwealth ex rel. Crispin v. Jones.

2. The act of 11th *April*, 1799, sect. 2,(a) authorising an assignment of an indenture of apprenticeship requires, that " the apprentice, or his or her parent or parents, or guardian " or guardians, shall give his, her, or their, consent to such " assignment before some justice of the peace, where the " master or mistress shall live." In *The Commonwealth* v. *Vanlear*,(b) it was decided by the majority of this Court, that where the apprentice had a parent, the assent of such parent was necessary as to the assignment, as well as that of the apprentice. In the present case, it is not pretended that the parent assented. The circumstance of the original binding being by the overseers of the poor, can make no difference, the assent of the parent is still required by the act of assembly. But even the assent of the apprentice is not regularly authenticated. It should appear as a part of the proceedings at the time of the assignment, and should be so certified by the magistrate at that time, proof afterwards will not supply this omission. The case is like the acknowledgment of a *feme covert;* if such acknowledgment is not certified by the magistate, proof will not afterwards be admitted of the fact.

*Gordon* and *T. Sergeant*, for the defendant.

1. The act of 9th *March*, 1771, authorising the overseers to put out poor children as apprentices, males to the age of 21, and females to the age of 18, without requiring any act of the infant, is so full in its provisions as to leave no doubt on this point. It would be manifestly absurd to require, that an infant child should participate in the act.

2. Have we given legal evidence of the assent of the apprentice? If so, it is not necessary to shew more. All that the law requires, is, the fact of assent; it does not require the magistrate to certify it. Of course it may be made out afterwards by parol proof. If the registry of the justice be defective, the defect may be supplied by parol proof. This was permitted in the case of *The Commonwealth* v. *Blaine.*(c) There the Court allowed parole vidence, to shew that there

(a) 3 *Smith's Laws*, 385
(b) 1 *Serg. & Rawle*, 248.

(c) 4 *Binn.* 186.

1817.

The Com-
monwealth
ex rel.
CRISPIN
v.
JONES.

was a mistake in the clerk's record in the registry of a slave ; and refused to discharge him. That was a much stronger case than the present ; for the law required a registry ; and it involved a question of liberty. This case is distinguishable from that of *The Commonwealth* v. *Vanlear*. The original binding here was by the overseers of the poor ; the power and controul of the parent being entirely taken away. If his assent was not required to the binding, it cannot be deemed necessary to the assignment.

TILGHMAN C. J. was sick and absent.

GIBSON J. (After stating the case.) 1. What would be the true construction of the act of the 29th *September*, 1770, if the first point turned on it, I will not now pretend to determine ; but it would require strong expressions in a statute to induce me to consent to overturn the practice of nearly half a century : and, during that period, it has uniformly been customary for overseers of the poor to execute indentures of apprenticeship, without requiring the signature of the apprentice. And there is good reason for it ; for what would be more absurd than to require sealing and delivery by an infant at the breast ? or to say it must remain chargeable, until it have sufficient discretion ? What shall be esteemed the period of such discretion ? or must each case depend on its own peculiar circumstances ? Happily we are relieved from such enquiries by the 8th section of the act of the 9th *March*, 1771, which, in direct terms, gives the overseers power to put out poor children as apprentices, with the approbation and consent of two justices of the peace of the proper county.

2. I am of opinion, however, that the assent of all parties, requisite to give validity to the assignment of an indenture, should be certified by the justice, or at least expressed in writing before him, and attached to the instrument at the time of such assignment. What is the object of requiring the presence of a justice of the peace ? Certainly not merely that he may be a witness, to prove the assent of the apprentice, parent, or guardian, in case that fact should be disputed ; for any other witness, of equal personal respectability, would answer the purpose quite as well : but his intervention is to be *official*, and should, therefore, be attested or certified in the same manner as any other official act. He is to receive

the assent of the apprentice, and see that it is not extorted by the coercion or fraud of the master. This provision of the act was intended to afford the same protection to the apprentice that a separate examination does to a *feme covert*, about to acknowledge a deed. The separate examination has no efficacy in validating the deed, the *acknowledgment* being the efficient act for that purpose, but is intended merely to secure the wife from imposition, by rendering her acknowledgment void as against herself, when not taken after a proper examination. And yet this part of the transaction cannot be made out by parol evidence, but must be officially certified by the officer, in the same manner that he certifies the acknowledgment itself. In *M'Intire* v, *Ward*, 1 *Binn.* 470, the defendant offered parol evidence of the declarations of the wife, that she executed the deed voluntarily, and that, if it were not sufficient, she would execute and acknowledge it over again, or do any other act to make it good ; and this evidence was very properly overruled. The *Commonwealth* v. *Blaine*, 4 *Binn.* 186, is cited to shew that a defective registry of a slave has been helped out by parol proof. I entertain unfeigned respect for the talents of the judges who decided that case ; yet, I confess, I have never been satisfied of the propriety of the decision, and cannot consent to extend its authority to cases merely analogous. There, the admissibility of parol evidence to explain the registry, did not *necessarily* arise ; for the slave did not, as the Court seem to have supposed, claim his freedom on the ground that he had not actually been registered *within six months after his birth;* but, that the registry, stating him to have been born six months after its own date, was insensible and void ; that the registering acts intended to furnish the slave with conclusive evidence of the termination of his servitude, by making the period of birth a matter of record, of the advantage of which, neither the mistake, negligence, nor fraud of the master could deprive him ; that, although it was then easy to ascertain the time of the relator's birth, yet, the birth of a negro child being at best a matter of no great notoriety, the fact could scarcely be expected to be made out by parol evidence, at the period when his servitude ought to expire, which was the time when the inquiry would to him be most material ; that as the registry ascertained nothing, it could be of no advantage to him, and would not obviate the necessity of re

*margin:*

1817.

The Commonwealth *ex rel.* Crispin *v.* Jones.

1817.

The Com-
monwealth
ex rel.
CRISPIN
v.
JONES.

recurring to parol evidence, when the period of his freedom should arrive ; that registering, being an act for the benefit of the slave, with the performance of which he has nothing to do, must be done by the master under the penalty of forfeiting all title to the slave's service, if it be performed inefficiently ; and that it is a general principle, that where a loss must fall on one of two innocent persons, *it shall be borne by him whose negligence was the cause of it.* These were the grounds on which the cause was put, in behalf of the slave, who I then thought, and still think, should have been discharged. As the parol evidence could not cure the defect on the face of the registry, it is very clear its *competency* did not come directly in question, and I am, therefore, not disposed to give this part of the case as much weight as I would otherwise do. The bent of my mind is strong against altering or supplying any part of a written instrument by parol proof, which is always attended by danger. In *Pennsylvania*, the Courts have already gone further in this respect, than sound policy can warrant.

There is no evidence, that the parents of the apprentice assented to the assignment ; but it is contended, that by the terms of the 2d section of the act of 11th *April*, 1799, assent is not necessary. In the *Commonwealth* v. *Vanlear*, this point was put at rest ; for though Mr. Justice YEATES, a respectable authority, dissented ; yet, independent of the authority which the case derives from having been the opinion of the Court, I am convinced, by the reasons of the Chief Justice, and Mr. Justice BRACKENRIDGE, that, on principle, the decision was right. It is not, therefore, to be doubted, that the assent of the parent or guardian is as requisite to the validity of the assignment, and to be evidenced in the same manner as that of the apprentice. I am, therefore, of opinion, that the relator be discharged.

DUNCAN J. Two objections are made to the return of the causes of the taking and detention.

1. To the indenture ; that it is made by the overseers of the poor of *Lower Dublin ;* the infant not being a party to the indenture.

2. To the assignment ; that it is not according to the provisions of the act of 11th *April*, 1799; inasmuch as there was not any consent thereto given before the justice, by the ap-

prentice and by his father; and that the only evidence of such consent must be from writing, made at the time, by the justice.

It is unnecessary to determine whether this objection to the validity of an indenture, under the act of 20th *September*, 1770, would prevail, as this indenture is not founded on this act, but on the law of 9th *March*, 1771, the 6th section of which provides, that " it shall be lawful for the overseers, " of the poor of the township, by the approbation and con- " sent of two or more justices of the county, *to put out* as " apprentices, all such poor children whose parents are dead, " or shall, by the said justices and overseers, be found un- " able to maintain themselves."

This power must, in its nature, be compulsory in its execution ; it requires not the agency or co-operation of father or child. It takes the child out of its parent's arms, and humanely and wisely confers on the overseers, the direction and management of the poor child ; the legislature seeing that there were many poor persons, who had not the benefit of a parent's education. Wisely is this power thus entrusted to the overseers, who have the best opportunity of knowing their situation and treatment. But, this power is not left without check or controul ; for two justices of the peace must concur in the consent and approbation. Such children are not to run wild ; become common street-beggars, or something worse, or be supported as paupers. Their support is not the only object of the legislature, but their education, and the acquiring a knowledge of some trade, or of husbandry, so as to enable them, when they become their own masters, honestly to maintain themselves. These humane views can be effectually attained in no other way, than by considering this as a compulsory power ; not depending on the volition of the parent or child, but on the judgment of the overseers, with the approbation of two justices. This section in our poor law, is similar to the provisions of the stat. 43 *Eliz.* ch. 2. The indenture under that statute, is by the church-wardens and overseers of the one part, and by the master of the other part. On such indenture, though the overseers, &c. must be the party on the record, yet on a suit brought for non-performance of covenants by the master to instruct, the Court would consider the apprentice as the only real person ; the person

having the beneficial interest. I am, therefore, of opinion, that this is a valid indenture. I call not in to aid this construction an uniform practice, under the act, of nearly half a century. But, if the question were doubtful, I would not be inclined to destroy all the indentures of poor children throughout the state, sanctioned as they are by this long unbroken usage ; there is, however, no doubt in my mind, that the form is in this particular accurate.

But the objection to the assignment appears to me insurmountable ; sufficient has appeared in the course of this investigation to satify me of the fairness of this assignment, and that the boy and his father, in substance, did consent to this assignment. Independent of the positive proof, the long continuance in the service of Mr. *Jones;* the acquiescence of the father residing in the same township ; the frequent visits of the son to the father, and the perfect satisfaction of both, with the conduct of Mr. *Jones;* the application by the brother to purchase out the remainder of his time, and the *habeas corpus* avowedly sued out because *Jones* refused to part with him, afford the strongest internal evidence of this consent in fact ; and I would gladly prevent this attempt to deprive *Jones* of his services ; when he has arrived at that time of life, that his services would be most valuable, from meeting with success. But the Court cannot dispense with the provisions of the law. They cannot accept of a substitute or equivalent for the mode prescribed by the legislature.

A master cannot assign over his apprentice ; the person of a man is not strictly and legally assignable. *Burr. Set. Ca.* No. 135. 1 *Mass. Rep.* 172. 8 *Mass. Rep.* 299. The right and the mode of assignment depend on statutory provisions. On the death of the master, by the act of 11th *April,* 1799, his executors or administrators may assign to such suitable person of the same trade or calling as may be approved of by the Court of Quarter Sessions. Now this approbation cannot be by parol ; it must be entered on record, as all other acts of the Court are, and this then is the prescribed course in that case. But as assignments of apprentices by their masters would more frequently occur, the legislature, in order to afford reasonable facility, direct another course. "And when any master shall assign over his apprentice, the "assignment shall be legal, provided the term of the inden-

"ture extended to assigns, and provided the apprentice, or
"his or her parent or parents, guardian or guardians, shall
"give his, her, or their consent to such assignment, before
"some justice of the peace of the county where the master
"resides."

1817.

The Com-
monwealth
ex rel.
CRISPIN
v.
JONES.

As the father possessed, at the common law, the power of
selection of a master, *Com. Dig. Justice of Peace, B.* 55.
this power where the father is dead, or unable to maintain his
child, so far as relates to the original binding, is vested in the
overseers ; but so far as respects the assignment, the consent
of the father is reserved to him.   The assent of the father to
the selection of a master, being his natural and inherent right,
could not be divested but by some positive law.   It appears
to me, that so far from its being the intention of the legisla-
ture to deprive him of this parental power, it was the inten-
tion to secure it to him.   It is not unusual, in the construc-
tion of wills, if necessary to effectuate the general intention
of the testator, to construe *or and;* and such, if the context
requires it, should be the construction of statutes.   It never
can be that this whole sentence is to be considered in a
disjunctive sense.   It never could be that the legislature
could intend that a child should bind himself without and
against the consent of the father.   The legislature have de-
clared he cannot do so.   If, then, the assent of the father, in
case of voluntary binding, is secured to him, would not the
same reason apply to the assignment?   From the view which
I have taken of the whole frame and policy of the several acts
of assembly on this subject, as forming one system, my mind
has arrived at this conclusion, that the same assent which is
required to the original binding where that is voluntary, and
under the act of *September,* 1770, is required to all assign-
ments under the act of 1799; that is, the consent of the pa-
rent, where there was a parent; and where there was none
to exercise the duty of parent, guardian.   Such was the
construction in the case of *Vanlear,* and such appears to me to
be the true construction.   That the consent of an infant of 8
years of age, to the assignment, or that the consent of a child
in his cradle, should be solemnly taken before a justice of the
peace, is an interpretation which I can never put on any act of
the legislature.

As my opinion is, that the consent of the father is neces-
sary; and as the law giving the power has prescribed, that

the consent shall be given before a judicial officer, the Court cannot substitute any other consent, or infer from circumstances, that a consent has been given. It cannot be, where the legislature have said, that the consent to render the assignment legal shall be given before a justice of the peace of the county where the master resides, that a consent given any where, and before any person, shall be sufficient. The agency of a Court, in the case of assignment by executors or administrators, the agency of a justice of the peace of the county, when the assignment is by the master, is required. An assignment, where the consent was given before a justice of another county, would be void. Certainly, then, when not given before any judicial officer, it must be so. Here, then, it is not pretended that the consent of the father, in any form, or at any time, was given before any magistrate. This is a condition annexed to the instrument to give it validity; if it wants it, it is void. It is as much required as that the indenture should extend to assigns. It has been justly compared to the consent of a *feme covert* to the acknowledgment of a conveyance.

When the law prescribes an act to be done before a judicial officer, it necessarily imports, that there should exist some written memorial of the act being so done, to which recourse can be had, in all controversies respecting it; something which will perpetuate it; some written testimonial which will be evidence of it. It is not to float on the memory of the officer; it is not to die with him. In the multiplicity of concerns entrusted by our laws to justices of the peace, what a door would be opened to misapprehension, mistake, and contradiction, if the memory were to be the only record of their official acts! I incline, therefore, to the opinion, that the law requires some written testimonial of the justice, of the consent of all, whose consent is required to the assignment.

The justice of the peace of the proper county is the judicial officer before whom the consent is to be given. He, on the examination of the father, and of the apprentice, is to judge of the fulness and fairness of the consent. It is not to be mere loose casual conversations, but an examination in the discharge of a duty required of him by law, and he is made the judge of such consent. On any other construction, this wise and salutary condition annexed to the assignment

of apprentices, to prevent fraud and imposition on those most likely to be imposed on, would be defeated, and the check and controul of these assignments by the agency of a judicial officer, be of no real importance.

I am, therefore, of opinion that *George Crispin* be discharged from the custody of *Joshua Jones*. As *Jacob Miles*, the person to whom he was originally bound, is not before the Court, nor any application made in his behalf, the Court take no further order than merely to discharge him out of the custody of him by whom he is now detained.

It may be proper to state, that the decision of remanding on a *habeas corpus*, is not final. It would be against the policy of our laws, affording as they do so just a protection to the liberty of every citizen, that the opinion of one Judge, or of one Court, should be conclusive on the party. As no writ of error will lie, the party has a right, before he is finally concluded, to the judgment of this Court, the Court of last resort. In this case, as the question was a mere legal one, on a subject generally interesting, in which uniformity ought to prevail, it was peculiarly proper to afford the party the opportunity of having his case decided in this Court. In giving this opinion on a new question, arising under an act of assembly, of such general concern, we regret that we are deprived of the aid of the Chief Justice, and most sincerely lament the cause of that deprivation; but we could not keep this case under advisement. The party in custody had a right to our opinion.

Prisoner discharged.

1817.

The Commonwealth ex rel. CRISPIN v. JONES.

END OF MARCH TERM, 1817.

# CASES

IN THE

# SUPREME COURT

OF

# PENNSYLVANIA.

LANCASTER DISTRICT, MAY TERM, 1817.