The opinion of the court was delivered by
Tilghman, C. J.
This is an action of trespass vi et armis, &e., brought by Daniel Montgomery, defendant in error, against Daniel Cameron and Daniel Petrikin, for seizing his goods, ■ by virtue of an execution issued on a judgment obtained by Petrikin against Jeremiah Evans. The action was submitted to arbitrators, who made a report in favour of the defendants, from which the plaintiff appealed to the Court of Common Pleas. The appeal was entered on the 4th of December, 1821; and the suit was continued in the Court of Common Pleas until the month of January, 1823, when the defendants moved the court to dismiss the appeal for two reasons: — 1. That the oath, on entering the appeal, “that it was not entered for the purpose of delay,” &c., was taken, not by *129 the plaintiff, but by his attorney. 2. That the recognizance, instead of being for payment of money, was in the nature of special bail. To this it was answered by the counsel for the plaintiff, that supposing the objections to have been good,, if taken in time, it was too late for the defendants to avail themselves of them, after suffering the cause to remain upwards of a year in court, and putting the plaintiff to the expense of preparing for trial. I am of opinion, that this answer was sufficient. It was decided in the case of Clark v. M'Anulty, (3 Serg. & Rawle, 164,) that exceptions of this kind must be taken in a reasonable time, or they will be considered as waived. There was no error, therefore, in the court’s refusing to dismiss the appeal. But the real merits of the case between the plaintiff ’ and defendants, turned on a question of fraud. The goods which were seized by the defendants consisted of household furniture, once, certainly, the property of Jeremiah Evans, and found in his possession at the time the execution was laid on them. It was alleged by the plaintiff, that these goods were conveyed by Evans, bona fide, and for a valuable consideration, to David Humphreys, from whom he purchased them for their full value, and permitted Evans, who was employed by him as a clerk, to have the use of them. It was not alleged that the plaintiff was guilty of an actual fraud, but of what is deemed fraud in law, by permitting Evans to retain the possession of the goods. To form an opinion on this point, we must take a view of the evidence. Evans being indebted to Humphreys, and also to the plaintiff, as well as to cither persons, to an amount far exceeding the value of his property, was sued in Franklin county by a merchant of Baltimore, about the beginning of January, 1818. He had before that resided in Dan-ville, in Columbia county, where he was the owner of a house and store, and two lots of land. Being in. bad circumstances, he had left Danville, having locked up his store with some goods in it, and put one Lodge in the dwelling-house, with directions to take care of the house and furniture. Upon being arrested in Franklin county, he determined to secure Humphreys and the plaintiff in preference to his other creditors. Accordingly, he executed a bill of sale to Humphreys on the 5th of January, 1818, for his personal property in Danville, consisting of store goods and household furniture described in two inventories, and it was mentioned in the bill of sale that the grantor put the grantee into possession, by delivering to him the bill and schedules of the goods at the sealing and delivery of the bill of sale. On the same day, Evans made a deed to Humphreys foi all his real estate in Danville, which was recorded on the 3d of February, 1818. About the 22d of January, 1818, Evans was imprisoned for debt at Chambersburg in Franklin county, and after lying about six weeks in jail, he was discharged by the insolvent law. The goods conveyed to Humphreys were valued at five hundred and three dollars, seventy-two cents, and the real property at eighteen hun *130 dred dollars. On the 27th of January, 1818, Evans executed a writing, by which he conveyed to the plaintiff certain goods in Danville not included in the bill of sale to Humphreys, to secure a debt of six hundred dollars which he owed to the plaintiff, and by the same writing he empowered the plaintiff to deliver to Humphreys, possession of the property which he had transferred to him. Humphreys went to Danville with this writing, in consequence of which the plaintiff delivered him possession of the real estate and goods, in the beginning of February, 1818. Humphreys left Danville soon after, having given the plaintiff the key of the store in which the goods were, to keep possession for him, and taken his receipt for the same. lie suffered Lodge to remain in the kitchen of the dwelling-house adjoining the store. Some time after this, the plaintiff rented the house and store of Humphreys for one hundred and eight dollars a year, and • on the 4th of April, 1818, he purchased of Humphreys all the goods and personal property which Evans had conveyed to him, for the price of eight hundred and ten dollars. Humphreys transferred these goods to the plaintiff by a writing indorsed on the bill of sale from Evans to himself. On the trial of the cause, the plaintiff offered in evidence the bill of sale to Humphreys, its indorsement as aforesaid, and the writing by which Evans conveyed the other goods to himself, all which were admitted by the court, and formed the subject of three bills of exceptions taken by the counsel for the defendants. It is somewhat surprising that this evidence should have been excepted to. I cannot perceive the least ground for objection. None has been shown to this court, and therefore I shall barely say, that the exceptions have not been supported. The two following exceptions were next taken to the opinion of the court, in their answer to two propositions of the counsel for the defendant.
1. The court were requested to charge the jury, li whether Evans’s possession of the property in question, especially if mixed with goods admitted to be his own, would or would not justify his creditor, Dr. Petrikin, in levying on it.” The court charged, that the jury were to judge whether Evans or Montgomery had the possession. If Montgomery held the possession, allowing Evans to use it, as his store-keeper, 'it could not be taken to pay Evans’s debt; but it would be otherwise, if Evans had the entire possession. And that if the possession was in Montgomery, the circumstance of Evans having a few articles of his own in the house, would make no material difference.
2. The second point on which the eourt was requested to charge, was, “ whether the delivery to Humphreys, of Evans’s goods, after he had applied for the benefit of the insolvent act, was a legal transfer.” The court charged, that the transfer of Evans’s property to Humphreys, with a delivery of the inventories, was made before his application for the benefit of the insolvent laws, *131 although the actual delivery by his attorney, in fact, took place afterwards. A debtor may prefer one creditor to another, and if the jury believe that the transaction was fair and honest, it would be considered a legal transfer.”
As these two points are clearly connected, I will consider them as parts of the same subject. It is to be borne in mind, that the present dispute is only about Evans’s household goods, included in the bill of sale to Humphreys. If the witnesses are believed, Evans had not an uninterrupted possession of these household goods, from the time he left Danville to the time of the levy made by the defendants. For, not to say any thing of the delivery of the inventories at the time of the execution of the bill of sale, Humphreys swore, that the possession was delivered to him by Daniel Montgomery, after which he gave the possession back to Montgomery, to be kept for himself, and took his receipt for the goods. This was a complete divesting of the possession from Evans, who was then in Franklin county. The possession of the house and store was also out of Evans, and in Humphreys, who had the keys, and suffered Lodge to remain in the kitchen. The deed for the real property was on record. The plaintiff rented the house and store of Humphreys. When the plaintiff purchased the personal property of Humphreys, it was all in the house and store: so that when Evans returned to Danville, house, store, and goods were in the possession of Montgomery. Now, if after this, Montgomery took Evans into his service as a clerk or storekeeper, and suffered him to live in the house and make use of the household furniture, the law would not adjudge such possession to he fraudulent. If A. being in possession of goods sells or mortgages them to B., and A. is suffered to retain the possession, it is fraudulent, because the possession never having been out of A., the world is deceived by that possession- which is the badge of the' property. And if, in such case, A. should make a secret delivery to B. and immediately receive the possession again, it would still be fraudulent, because the world knows nothing of these private transactions. In the present ease, it was proved by Donaldson that when the plaintiff purchased of Humphreys, he declared that he wished the matter to be made public. And when, in addition to this, it is considered, that before Evans came to Dan-ville and received the possession from the plaintiff, he had been publicly discharged under the insolvent law, at Chambersburg, which could not have been done without making an assignment of all his property, it is improbable that any person at Danville could have been deceived by the circumstance of his being put into possession of the house and store, and the household goods in the dwelling-house. After all, the evidence showed a complicated transaction, not very easily to be decided as matter of law, and the court submitted to the jury whether all was fair and honest, and whether the plaintiff was completely in 'possession before he *132 took Evans into his employment, and permitted him to make use of the furniture. I cannot say, therefore, that there was any such misdirection in the charge, as would justify this court in reversing the judgment for error. As to the right of a debtor, on the point of insolvency to prefer one creditor to another, it cannot be doubted. The law, on that subject, was well considered in the case of Wilt v. Franklin, (1 Binn. 502.) And, with regard to the actual delivery in the present instance, having been made after the application of Evans for the benefit of the insolvent law, he swears that he disclosed every thing to the court by which he was discharged, nor haire the assignees under the insolvent law made any claim to the property purchased by the plaintiff of Evans. It is a circumstance of weight, too, that Evans being in Franklin county, and the goods at Danville, it was impossible to make an immediate delivery.
But there is another exception, on a minor point, which is fatal to the plaintiff’s judgment. John Russel, a witness for the plaintiff, was asked by the defendants, on his cross-examination, whether the plaintiff had any property of his, under his care, to cover it from his creditors. Having answered that he had not, the defendant’s counsel proposed to ask the witness, “ whether the plaintiff did not buy the witness’s real property at his instance.” The counsel for the plaintiff objected to the question, and the court would not permit it to be put. Why it was objected to, I know not, but it was certainly evidence. If the plaintiff did buy the defendant’s property at his instance, it was a circumstance which might show that the witness was under an obligation to him, and this might have some effect on his evidence. The party against whom a witness is produced, has a right to show every thing which may in the slightest degree affect his credit. I am of opinion, therefore, that the question proposed by the defendant’s counsel, was proper, and ought to have been permitted to be asked. For this error', the judgment is to be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de no'vo awarded.