(65 App. Div. 38.)

GUMBY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. STREET RAILWAY—FOOT PASSENGER — INJURY — EVIDENCE — QUESTION FOR JURY.

Plaintiff, a boy of 5 years, in charge of another boy of 11 years, was struck by a car horse, and injured, while attempting to cross a street railway track in front of a horse car and behind a wagon preceding the car. The elder boy testified that when they reached the track the car was about 30 feet distant. Another witness testified that when he saw the two boys between the two tracks the car was from 30 to 35 feet away; that the horses were moving very fast, and the driver whipping them with his lines. The car driver testified that when he first saw the boys, plaintiff was running, and looking towards the car, about 15 or 20 feet away, and that there was a space of about 10 feet between his horses' heads and the rear end of the wagon. *Held*, that the question of defendant's negligence in failing to avoid the accident was for the jury.

2. INSTRUCTION—FAILURE TO OBJECT—ASSENT TO LAW ANNUNCIATED.
   Where counsel permit an instruction to be given without objection,
   they thereby assent to the proposition of law laid down.
3. WITNESS—HOSTILITY—EVIDENCE—ADMISSIBILITY.
   In an action against a street railway company for injuries to a foot
   passenger, defendant's witness was asked if he had not solicited a rela-
   tive of plaintiff's to retain a friend of his as counsel, saying that, if that
   were done, he would be a witness for the plaintiff, but otherwise for the
   railroad company. On his denial the relative was produced, and swore
   to the circumstance specified. *Held*, that the relative's evidence was not
   objectionable as concerning a collateral matter, and was properly ad-
   mitted to show the hostility of defendant's witness towards plaintiff.
   Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action for injuries by George A. Gumby, an infant, by Mary T. Clayton, his guardian ad litem, against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chas. F. Brown, for appellant.
J. Brownson Ker, for respondent.

PATTERSON, J. The plaintiff, a boy, 5 years of age, in charge of another lad about 11 years old, attempted to cross from the west to the east side of Sixth avenue at about the southerly corner of Third street. There was a wagon and a car proceeding on the westerly, or downtown, track, and also a car preceded by a wagon moving northward on the easterly, or uptown, track. The boys waited to allow the wagon on the westerly track to pass, and then stepped into the space between the two tracks. The wagon that was going northward also passed, and then they attempted to cross the easterly track. The elder boy crossed in safety, but the younger one, just as he reached the easterly rail, was struck by the off horse, was knocked down, run over, and when he was taken up he was lying under the car between the front and rear wheels, and directly under the fourth seat from the front. His injuries were very serious. There was evidence to show that the horses were being driven at a rapid rate of from 10 to 12 miles an hour, and that the driver was urging them on. The attribution of negligence is that the driver should have stopped the car so as to have avoided the accident, and that he might have done so. When this case was before us on a former appeal, it appeared in evidence that when the boys were standing in the space between the two tracks the car was distant somewhere from 20 to 40 feet from them, and it was held that, if that were so, and there being nothing to obstruct the driver's view, if he, regardless of the child's position, urged his horses at a rapid rate of speed, with the result that one of them struck and injured the boy before he could cross the east rail, there was enough to carry the case to the jury on the subject of the defendant's negligence. 29 App. Div. 335, 51 N. Y. Supp.

553. Upon an examination of the present record, I find that there is in it the same evidence on the subject of the distance of the car from the boys while they were standing in the space between the tracks, as appeared in the record of the first trial; but the plaintiff's witnesses are contradicted, and there is an irreconcilable conflict of evidence upon that subject. Eldridge, the elder boy, swears that when he and the plaintiff got between the tracks they looked to see where the car was, and that it was by the barber shop on the east side of Sixth avenue. That barber shop is about 30 feet south of the southerly crossing of Third street. He said on his cross-examination, "It was past the barber shop by that time." Joseph Merchant, a witness for the plaintiff, testified that when he saw the two boys in motion between the two tracks the car was away from them about 30 to 35 feet, that the horses of the car were moving very fast, that the driver of the car was whipping them up with his lines. This witness also swears that he had experience in riding and driving horses. The theory of the defense was, and there was evidence to sustain it, that when the boys attempted to cross the second track they were only about 7 or 8 feet in front of the car horses. The driver of the car swears that when he first saw the boys the plaintiff was running towards his car, looking towards it, and that his head was directed away from the car, and that he was about 15 or 20 feet away from the Third street crossing, and that there was a space of about 10 feet between the heads of the horses drawing the car and the wagon in front of it on the track. It was a plain conflict of evidence for the consideration of the jury, and it is not shown to a demonstration, as the defendant's counsel insists, that the accident could not have been avoided by the defendant's driver; nor is the verdict against the whole evidence, in view of the condition of the testimony as above suggested.

On the question of contributory negligence the case was properly one for the jury. It is contended by the defendant that the elder boy was guilty affirmatively of some negligence which should prevent a recovery. I find nothing specific in the record to establish that contention directly, nor does it result inferentially. Counsel for the defendant asked the court to charge "that, assuming the Eldridge boy was a proper person to take the Gumby boy out, that then any negligence on the part of the Eldridge boy while he was in charge of the Gumby boy would bar a recovery, and that any contributory negligence at the time of the occurrence on the part of the Eldridge boy would bar a recovery"; and the court so charged. The court also instructed the jury that the Eldridge boy was chargeable with a degree of intelligence and a breadth of judgment which was commensurate with his years, and that view of the law was assented to by both sides. I am not able to find in this record anything that would authorize the court to say as matter of law that there was negligence on the part of Eldridge in attempting to cross the easterly track with the younger child under the circumstances as they must have been found by the jury. Counsel for the defendant, by not excepting, assented to the proposi-

tion of law laid down by the judge that the elder boy was required
to exercise only such judgment as could be expected of a child
of his years; and it was for the jury to say, under all the circum-
stances of the case, whether he was guilty of negligence contributing
to the accident in attempting to cross the track with the younger
boy as and when he did.

A colored clergyman by the name of Tompkins was called as a
witness for the defendant, and swore that the plaintiff ran immedi-
ately in front of the horses of the downtown car, and in so doing
ran into the horses of the uptown car.   On his cross-examination
he was asked if he did not go to see the plaintiff's grandmother,
and solicit her to retain a colored lawyer, a friend of his, to bring
an action against the defendant; and if he did not say that, if that
lawyer was employed, he (Tompkins) would be a witness for the
plaintiff, and that he would be a witness for the railroad company
if the case were not given to his legal friend.   These questions were
answered in the negative.   Thereafter the grandmother was called
as a witness, and she was permitted to testify that Tompkins had
stated to her the several things above mentioned, which he had
denied on his cross-examination.   It is urged that it was error to
admit this testimony of the grandmother, on the ground that Tomp-
kins could not be contradicted as to collateral matter.   It was not
collateral matter.   The evident intent was to show that Tompkins
was a hostile witness, and that his hostility was inspired by the
fact that his friend was not employed as an attorney to bring an
action.   "The hostility of a witness towards a party against whom
he is called may be proved by any competent evidence.   It may be
shown by cross-examination of the witness, or witnesses may be
called who can swear to the facts showing it.   There can be no
reason for holding that the witness must first be examined as to
his hostility, and that then, and not till then, witnesses may be
called to contradict him."   People v. Brooks, 131 N. Y. 325, 30 N.
E. 190.   In Miles v. Sackett, 30 Hun, 68, it is remarked that "in
Starks v. People, 5 Denio, 106, it was said that it is always com-
petent to show the relations which exist between the witness and
the party against, as well as the one for, whom he is called; and
this principle was approved in Newton v. Harris, 6 N. Y. 345.   The
same point was considered in Cameron v. Montgomery, 13 Serg.
& R. 128, and it was there stated by Tilghman, C. J., that a party
against whom a witness is produced has a right to show everything
which may in the slightest degree affect his credit."   In Schultz v.
Railroad Co., 89 N. Y. 250, it is said, "Inquiry into the state of the
feelings of a witness towards either party is not collateral, and may
always be made."

The judgment and order appealed from should be affirmed, with
costs.   All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting).   I do not concur in the affirmance
of this judgment.   There is nothing in the testimony that would
justify the jury in finding that when these boys started to cross the
track upon which the car that run over the plaintiff was proceed-

ing the car was over 8 or 10 feet ahead of the boys. The witness Lyon, who was sworn for the plaintiff, testified that when the boys started to cross the track the front horse was about 30 or 40 feet from them, and the horses were then going at about the rate of 10 or 12 miles an hour. It appeared that the boys crossed the west track, and stood between the two tracks to allow a wagon to pass that was proceeding northward upon the east track, and the witness stated upon cross-examination that this wagon was ahead of the horses of the car about 10, 12, or 8 feet, and it was after the wagon going uptown had passed that the boys started to cross the track. The witness reiterates this several times, and it is apparent that he intended to say that when the boys started to cross the track the horses attached to the car were 30 or 40 feet away, but while standing to allow the wagon to pass the car had time to get up so that the horses of the car were but 8, 10, or 12 feet from the wagon when it passed the boys. The witness was asked: "How far were they [the boys] in front of the horses when they started to cross the second track? A. About eight or nine feet, or six or seven. I can't say exactly." None of the other witnesses testified to any fact which contradicted this evidence. The Eldridge boy, who was with the plaintiff, expressly testified that he could not tell how far behind the wagon the car was. The witness Merchant testified that when he first saw the boys between the two tracks, the horses were 30 to 35 feet away, but all the testimony shows that the two boys waited for the wagon going north to pass, and there is nothing to show, when the boys attempted to cross, after the wagon had passed, that the car which struck them was over 8 or 10, or at the most 12, feet away, and there is nothing to show that at this distance, with any attention or care on the part of the driver, he could possibly have avoided the accident.

I think the judgment should be reversed.