of his lots for a period of ten years, or since the construction of defendant's road; but a fence along the edge of his lots, as shown by his diagram, would be on the northerly side of the highway, and within the boundaries of blocks 77 and 81, so that a highway and portions of the land contained in block 77 intervene between the place where plaintiff's horses were being pastured. The fact that a fence along the edge of plaintiff's lots had been torn down and destroyed by defendant's employés months before does not show that the defendant had neglected to construct and maintain a proper fence along the sides of its road, and there is absolutely no evidence in this case that the plaintiff's horse fell upon the defendant's tracks or right of way. While the evidence does not disclose the real situation, the most probable explanation of the matter—and the plaintiff's diagram suggests this view—is that Thirty-Eighth street was not opened east of about the middle of block 78, and that Sixth avenue was not opened between Thirty-Seventh and Thirty-Eighth streets, and that the plaintiff, renting blocks 78 and 82, lying on either side of Sixth avenue, and made use of the latter avenue and that portion of Thirty-Eighth street which remained unopened, in common with the two blocks mentioned, as a pasture land, and that the defendant railroad company, or the public authorities, had excavated a portion of Thirty-Eighth street to the level of the defendant's railroad running through the cut in blocks 77 and 81, lying to the south of plaintiff's premises, and that the horse fell into this highway, and not upon the defendant's right of way at all. In short, the plaintiff's map makes it certain to our mind that the defendant's railroad is not adjacent to the plaintiff's land, and that the plaintiff's horse, grazing in the highway, fell into an excavation made within the limits of such highway, and was killed. At least, there is no evidence that he was killed upon the defendant's right of way, and, if he was not, the plaintiff can gain no rights under the statute, even if there was no fence along the sides of its tracks, and upon this point there is likewise no evidence.

The judgment appealed from should be affirmed, with costs. All concur.

---

(97 App. Div. 116.)

## In re STEENWERTH.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. EXECUTORS—CLAIMS—EVIDENCE.

Evidence *held* insufficient to establish the payment of a bill for drugs as a claim against testator's estate.

2. SAME—WITNESSES—CROSS-EXAMINATION.

Where a witness on behalf of a claimant against a decedent's estate had first appeared to oppose the claim, and after he had been paid $250 by the claimant, to be deducted from her share of decedent's estate, in accordance with a compromise between the heirs, for the interest which witness might have in the estate, he testified as the main witness on behalf of the claimant, it was error for the court to refuse to permit him to be asked on cross-examination if he had not first appeared at the office of the counsel for the objectors to the claim, ready to contest the same.

3. SAME—PREJUDICE.
> The objectors were necessarily prejudiced by such ruling, within Code Civ. Proc. § 2545, providing that a surrogate's decree shall not be reversed for an error in the rejection of evidence unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby.

Appeal from Surrogate's Court, Kings County.

Judicial settlement of the accounts of John H. Steenwerth as executor of the will of Philip Steichelmann. From certain parts of the surrogate's decree adjudging that the executor pay certain amounts on claims of creditors, with costs to the creditors' attorney, certain of the heirs appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Louis Wendel, for appellants.
Max E. Lehman, for respondent.

JENKS, J. The claimant and the executor agreed that the surrogate, upon the judicial settlement of the executor's accounts, should hear and determine two claims against the estate which had been rejected. The learned surrogate disallowed the first claim, save the item of $14 paid to a druggist for medicines. Another item of $60 paid for taxes is not now disputed. The second claim was allowed. It is made up of $66 for interest on a loan to the testator, $100 and $330, both for the care and nursing of the testator at different periods, and $72 for his board.

The proof is insufficient to establish the payment of $14 for medicines. It consists of the testimony of the brother of the claimant, Mr. Steichelmann, that his father, the testator, lived with the testator's daughter between January 1, 1899, and July 1, 1901, and that on or about December 1, 1901, the witness saw the claimant pay an itemized account of $14, more or less, for medicines to a druggist. He further testifies that he "did not know what it was for." There is other evidence that the testator was ill while he lived with his daughter. Illness is the common lot, and the buying of medicines is commonplace. Therefore this proof is so inadequate as to fall far short.

Aside from proof that the testator lived with the claimant, and was there sick in mind and body, so as to require constant attention and nursing, and aside from certain self-serving statements of the claimant to outsiders, the second claim rests mainly, if not wholly, upon the testimony of the said Mr. Steichelmann. Without it the proof is meager and inadequate. There is nothing unusual in the circumstance that a father feeble in mind and body lived with his daughter, and was nursed and cared for by her. Even if, in the course of things, it was natural that she was entitled to compensation for her filial conduct, we may find that compensation in the will, which was made wholly and exclusively in her favor. It appears from the record that objections to probate were filed on behalf of another daughter, which were finally withdrawn. And it also appears in the executor's schedules that the claimant, once the sole devisee and legatee, is entitled to one-half of the estate, that the other sister is entitled to one-quarter, and that others are entitled to certain interests therein. Evidently there was a compromise

which distributed the estate counter to the provisions of the will. If the will as drawn had been probated, then, of course, the claimant had no reason to file her claims, but, in view of the final disposition, the benefit of establishing her claims is obvious.

The said witness, on his cross-examination, testified:

"I was paid $250 out of the estate by my sister. It was paid for the interest I might have in the estate. It was paid to me by Mr. Steenwerth, the executor, at my sister's request. I was at Mr. Wendel's [the counsel for the objectors] office at one time. Q. Ready to contest the claim of your sister? (Objected to. Objection sustained. Exception.)"

I think that the exception was well taken. The $250 was not paid to the witness to discharge any debt, for he testifies that it was paid "for the interest I might have in the estate." His name does not appear in the schedule of those entitled to share in the estate; i. e., as the result of any compromise or arrangement between the heirs. But a separate schedule shows that $250 was paid to the witness, "being advanced at the request" of the claimant, "to be deducted from her one-half interest in the estate of the decedent." If this witness was ready at one time to contest the claims which he now supports by his testimony, is not the objector entitled to show such a state of mind to the court? If it could be elicited that this witness, once adverse to his sister's claim, thereafter was paid $250 by her, even though he testifies that it was "paid for the interest he might have in the estate," is not such evidence competent, relevant, and material? Suppose it could be shown that at the time of this payment the attitude of the witness as to these claims was discussed, and a change thereof demanded from him, or even that such attitude was objected to. I think that it is quite clear that it was error thus to halt the cross-examination. Starks v. People, 5 Denio, 106; Matter of Mason, 60 Hun, 46, 55, 14 N. Y. Supp. 434; Gumby v. Metropolitan Street R. Co., 65 App. Div. 39, 72 N. Y. Supp. 551, affirmed in 171 N. Y. 635, 63 N. E. 1117. The error falls within the limitation of the rule of section 2545 of the Code of Civil Procedure, in that the exceptant was necessarily prejudiced thereby. The decree of the Surrogate's Court should be reversed.

Decree of the Surrogate's Court of Kings County reversed, and proceedings remitted for disposition in accordance with the opinion of JENKS, J.; costs to abide the final award of costs. All concur.