# DAVID S. HAMMOND, SHERIFF OF COOK COUNTY,

## v.

# THE PEOPLE, ETC., *ex rel.* JOSEPH VACARO.

## SAME

## v.

# THE PEOPLE, ETC., *ex rel.* PAUL CELLA.

1. WRIT OF ERROR — HABEAS CORPUS — *writ of error will not lie.* The decision of a Circuit Court, or of a judge in vacation, upon the hearing of matters arising under a writ of *habeas corpus*, concerning the right of the petitioner to his discharge from imprisonment, is not of that final character, that the proceedings can be reviewed upon writ of error.

2. SAME — *other cases where it will not lie.* A writ of error will only lie upon a final judgment. It will not lie to review an interlocutory order.

3. At the common law, a writ of error would not lie to review a judgment awarding a peremptory mandamus, a *procedendo*, or a denial of prohibition; for the reason that such judgments were not final.

4. SAME — *to what extent it will lie.* While a writ of error will not lie from the decision of a Circuit Court upon *habeas corpus*, for a review of its rulings in reference to the subject matter of the petition; yet, where, upon a discharge of the prisoner, the court renders a judgment against the officer having the party in custody, for costs, that is a final judgment, which he may have reviewed upon writ of error, so far as it relates to the question of costs.

5. COSTS UPON HABEAS CORPUS — *officer not liable.* Where a party has been arrested by an officer under a valid process, the officer having the custody of the party, upon his being committed to jail under such arrest, is not liable for costs upon the prisoner being discharged from his custody upon *habeas corpus*.

6. ADOPTING FOREIGN STATUTES *and foreign construction.* In adopting, substantially, as we have in this State, the English *habeas corpus* act, it is reasonable to suppose the legislature thereby intended also to adopt the practice in proceedings under that act, as settled in the English courts, when adapted to our circumstances and not contravened by statutory provisions.

7. PROCESS AND JUDGMENTS, *running against a party by a wrong name.* Where a summons is sued out, and judgment entered by default, against a party by his christian name alone, or by a name which he does not bear at all, and by which he has never been known, the summons, however, being served on the party intended to be sued, it is *held*, the party may be lawfully arrested and imprisoned under a writ of *capias ad satisfaciendum*, sued out upon such judgment, though running also in the wrong name; and a Circuit Court has no power, on *habeas corpus*, to discharge the party from imprisonment, upon the mere ground that he was not sued by his right name.

Hammond *v.* The People, etc.    Same *v.* The People, etc.

8. SEPARATE OPINION OF MR. JUSTICE BREESE — *of entertaining writ of error on habeas corpus.* If it be true that a writ of error will not lie in a *habeas corpus* case, for the purpose of reviewing the decision upon the main question, it ought not to be entertained at all, even upon the question of costs awarded in the proceeding.

9. But, whatever may be the rule in a case of *habeas corpus*, before a judge, not sitting as a court, a writ of error will lie for the review of the decision of a court of record, at one of its regular terms, as in this case, upon such a proceeding.

10. SAME — *of writs of error and appeals, generally.* It may well be said an appeal will not lie in a given case, because there is no statute allowing it; appeals are allowed by statute, and can be had in no case, unless so allowed.

11. But not so with a writ of error. That is a writ of right, and cannot be refused in any civil case. It is a rule, that a final judgment of an inferior court is subject to review on writ of error, except in cases where the legislature has otherwise provided.

12. SAME — *writ of error on mandamus.* It has been held that a writ of error will lie upon the award of a peremptory mandamus.

13. SAME — *writ of error upon prohibition.* It has also been decided that a writ of error may be brought upon a denial to grant a prohibition.

14. SAME — *habeas corpus — proceedings thereon — issue — demurrer to return.* An issue can be made up and tried on the return to a writ of *habeas corpus;* or, the return may be demurred to, under the provisions of the *habeas corpus* act.

15. SAME. — *habeas corpus — character of judgment.* The decision of a Circuit Court upon the hearing of a *habeas corpus,* is a final judgment, in *that* case.

16. SAME — *misnomer of defendant — abatement.* Where a party is sued by his christian name alone, it is his duty to appear and plead the misnomer in abatement, and give his name in full.

17. SAME — *matter in abatement — how waived.* Matter in abatement, if there be notice to the defendant, in fact, is waived if not pleaded, and cannot be assigned for error.

18. SAME — *misnomer of defendant — former recovery.* A judgment rendered against a party by his christian name alone, may be pleaded in bar of another suit for the same cause against him in his full name.

19. SAME — *remedy, if judgment erroneous.* But if it be an error in a justice of the peace to render a judgment against a party by his christian name alone, the remedy to correct it is by appeal.

20. SAME — *unlawful imprisonment — irregularity of proceedings.* Imprisonment, under a judgment, cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity, if the court rendering it had jurisdiction, although it should be erroneous.

21. SAME — *habeas corpus — power of court — extent of inquiry.* On *habeas corpus* a court has no power to discharge a party from custody under process of a legally constituted court, only for some one of the seven causes specified in the statute.

22. In such a proceeding the court has no power to look beyond the judgment, and reëxamine the grounds on which it was rendered, and thus practically reverse it.

23. SAME — *when judgment or execution is void.* An execution can only be treated as void when the judgment is void; and that is never the case when the court has jurisdiction of the subject matter, and the parties, especially if the defendant has had actual and timely notice.

WRITS OF ERROR to the Circuit Court of Cook county; the Hon. GEORGE MANIERRE, Judge, presiding:

These writs of error were sued out by David S. Hammond, sheriff of Cook county, for the purpose of bringing in review, before this court, the decisions of the Circuit Court upon two applications, by Joseph Vacaro and Paul Cella, respectively, upon *habeas corpus,* for discharge from imprisonment. The petitioners allege precisely the same state of facts in both cases. The petition of Vacaro represents that he is an Italian by birth, and for the last five years has been living, and in business, in Chicago. That, on the 12th day of March, 1863, one William M. Douglass, pretending to be a constable, came to the petitioner's place of business, in Chicago, and arrested him, and by force, and against the petitioner's will, compelled him to go with him to the jail of Cook county, and then and there delivered the petitioner, as a prisoner, to David S. Hammond, who was sheriff of Cook county. That the petitioner was then placed in said jail, and deprived of his liberty, and has ever since so remained in said jail. That he is informed that he is now in the custody of said sheriff, and is, by him, deprived of his liberty and confined in jail. That, as the petitioner is informed, he is so confined and imprisoned·by virtue of a certain writ, issued on the 11th day of March, 1863, by one Calvin D'Wolf, acting as a justice of the peace, in favor of one Peter Corbin, and against one Joseph. The petitioner states that he is unable to read or write in the English language, and has no knowledge of the contents or effect of said writ except as he is informed by others; that he speaks and understands the English language but indifferently; but, as he is informed, and believes, said writ was not issued

against the petitioner, and does not warrant or authorize his arrest; but was issued upon a judgment against one Joseph, in favor of said Corbin, and entered before said D'Wolf, as justice of the peace.

He further states that he was not present at the time of the rendition of said judgment, and was not a party thereto, and, as he is informed, and believes, is in no manner affected thereby. That he has always, at Chicago, and elsewhere, been known by his true name of Joseph Vacaro. He further states that he has, for years, been well known in Chicago, in the vicinity of his place of business, by his true name of Joseph Vacaro, and by no other name. The petitioner further states that he is confined and restrained, as aforesaid, in the custody of said Hammond, sheriff, and that his said confinement and restraint is illegal, because the said writ, under and by virtue of which he is confined, was not issued against the petitioner, and contains no warrant or authority for said sheriff to so confine and restrain him. He, therefore, prays that a writ of *habeas corpus* be issued to the said Hammond, and that he be discharged from said imprisonment.

A writ of *habeas corpus* was accordingly issued; Vacaro was brought before the court by the sheriff, who made return that he held the defendant, Joseph, in custody under and by virtue of a *ca. sa.*, issued by C. D'Wolf, a justice of the peace, dated March 11th, 1863, under and by virtue of which said defendant was arrested, on the 12th day of March, 1863, and committed to jail, and was then held by virtue of said *ca. sa.*

The facts, as developed in the testimony, upon the hearing, were as follows: Peter Corbin commenced an action of trover, before D'Wolf, a justice of the peace, in Cook county, against each of the persons named, Vacaro and Cella, but they were sued by names different from those above given; Vacaro was sued by the name of "Joseph," and Cella by the name of "Powell." The summons in each case was served upon the person actually intended to be sued, — upon Vacaro, in the one case, and upon Cella, in the other, — and they were both present

57

at the time and place of the intended trial, as indicated in the writs, but neither appeared in his case.

Thereupon, the agent of the plaintiff Corbin, dismissed the suits, he being a non-resident, and not having filed bonds for costs. Then the agent of the plaintiff asked Vacaro and Cella for their names, which they refused to give. Soon after, other suits of the same character were instituted by Corbin against the same parties, by the names of "Joseph," and "Powell," respectively, as before. Summonses were served upon Vacaro and Cella, the persons really intended to be sued.

It also appeared in evidence that the parties were known, and had for several years been known, among their acquaintances, in Chicago, by their true names, Joseph Vacaro and Paul Cella, and were known by no other names.

Upon these cases being called for trial, neither of the defendants being present, nor in any way appearing, judgments by default were entered; all the proceedings running against the respective defendants in the names of "Joseph" and "Powell."

The judgments not being satisfied, the plaintiff sued out thereon writs of *capias ad satisfaciendum*, running, also, against the defendants in the names of "Joseph" and "Powell," respectively. These writs were placed in the hands of the constable, Douglass, who, by virtue thereof, arrested Vacaro and Cella, and placed them in the county jail, of which Hammond, as sheriff, was the keeper.

Thereupon, Vacaro and Cella applied to the Circuit Court for these writs of *habeas corpus*, to the end that the grounds of their imprisonment might be inquired into, and they be discharged. On the hearing such proceedings were had that the prisoners were discharged from their imprisonment, and judgments were entered against Hammond, the officer who had them in custody, for costs.

Hammond now brings the matters before this court to be reviewed upon writs of error.

The questions presented are, *first*, whether the order of the court below, upon the hearing of the matters arising under

the writs of *habeas corpus*, concerning the right of the petitioners to their discharge, is of that final character that the proceedings can be reviewed, in this court, on writ of error; *second*, whether, if that be not so, this court will entertain the writ of error for the purpose of determining whether the officer was liable for costs; and, herein, whether the officer could be so liable; and, *third*, whether a party may be lawfully arrested under a writ running in a wrong name.

Messrs. BAILEY, GARY & WILLIAMS, for the plaintiff in error.

Upon the question as to the effect upon the rights of the parties arrested, because of the proceedings being in wrong names, the counsel insisted that the summons in the actions of trover having been served upon the petitioners, and they being the persons intended, the misnomer was matter in abatement only, and the validity of the judgments is not affected thereby. By suffering judgments to pass against them by the wrong names, the petitioners are estopped from availing, themselves of the misnomer. *Guinard* v. *Heysinger*, 15 Ill. 288. The court cannot know judicially that a party has either a christian or heathen name. *Nelson* v. *Highland*, 13 Cal. 74. See also *Smith* v. *Bowker*, 1 Mass. 76. In Chitty Pl. 245, it is said: " Though the *plaintiff appeared for* and declared against the defendant in the *wrong name*, as mentioned in the writ, that would warrant him in proceeding to judgment and *execution*, if he omitted to object to the irregularity in due time." Citing 6 Taunton, 115 (1 E. C. L. 534), *Smith* v. *Patten ;* *Oakley* v. *Giles*, 3 East, 167.

Messrs. SMITH, HART & CLYDE, for the defendant in error.

A review of a decision on *habeas corpus* cannot be had on writ of error. Hurd on Habeas Corpus, 562; *Bell* v. *The State*, 4 Gill, 304; *Russell* v. *The Commonwealth*, 1 Penrose & W. 82; *Wade* v. *Judge*, 5 Ala. 18; *Howe* v. *The State*, 9 Miss. 690; *Matter of Perkins*, 2 Cal. 424; *Ex parte Mitchell*, 1 La. Ann. 413.

Upon the other question, as to the effect of the misnomer, we insist this to be the law : that an officer cannot justify the taking of the goods or person of A. under a process issued against B., although it be averred that A. and B. are the same person, unless it be shown, *first*, that A. *appeared* in the suit ; or *second*, that he was as *well known* by the name of B. as of A. *Griswold* v. *Sedgwick*, 6 Cow. 455 ; *Cole* v. *Hindson et al.*, 6 T. R., 234 ; *Shadgett* v. *Clipson*, 8 East, 328 ; *Mead* v. *Haws*, 7 Cow. 332 ; *Finch* v. *Cocken*, 3 Dowl.

Mr. Justice WALKER delivered the opinion of the Court :

The question is presented by the record in this case, whether a writ of error lies upon the order rendered upon the hearing of a *habeas corpus*. By a comparison of the statutes, it will be found, that we have incorporated into our *habeas corpus* act, all of the material provisions of the British statutes of the 31 Car. II, c. 2, and the 56 Geo. III, c. 100. It has been frequently said that these statutes were only declaratory of the common law on that subject, with some slight changes in the practice under the writ. Having adopted the substance of the British acts in our statute, we may reasonably look to their courts for the practice that has obtained under the common law and their enactments, as it is only reasonable to suppose that our legislature designed to adopt the practice so far as it is adapted to our circumstances, as well as the provisions of the law itself.

Upon a careful examination of the reported cases in Great Britain, which have arisen under the common law or their statutes, it is believed that no case can be found, in which it is intimated, that a writ of error may be maintained on a judgment of a court or the order of a judge on the trial of a *habeas corpus*. But in the case of the *City of London*, 8 Coke, 121, which was on a *habeas corpus*, Lord Coke, in reporting the case, says, that to an objection that was urged, " it was answered and ruled that this is not a demurrer in law but a return on a writ of privilege, upon which no issue can be taken or demurrer joined, neither upon our award herein

doth any writ of error lie, and therefore the return is no other but to inform the court of the truth of the matter, in which such a precise certainty is not required as in pleadings."

In the case of *The King* v. *The Dean and Chapter of Trinity College*, 8 Mod. 27, which was on a writ of mandamus, the court, in deciding the case, say that "It is against the nature of a writ of error to lie on any judgment, but in cases where an issue may be joined and tried, or where judgment may be had upon a demurrer, and joinder in demurrer, and therefore it will not lie on a judgment for a *procedendo*, nor on the return of a *habeas corpus*." In Comyns' Digest, title Pleader, 3 B. 7, it is said that it will not lie upon a *habeas corpus* denied. In the case of *Regina* v. *Paty*, 2 Salk. 503, after the trial on the writ of error had resulted in refusing to release the prisoners, a question was raised, and referred to all of the judges, whether the queen ought to allow a writ of error, in that or in any other case, as a matter of right, or as a mere matter of grace. Ten of the judges held, that the queen could not deny the writ, but that it was grantable, *ex debito justiciæ*, except in cases of treason or felony. Two of the judges held, that the subject could not demand the writ in any criminal case. "Then it was a doubt whether a writ of error lay upon a judgment on a *habeas corpus*." From this case it appears, that whilst all of the judges agreed that the subject might demand the writ in all cases but treason and felony, and two of them held that it would not in any criminal case, still it was doubted whether it lay on a judgment on a *habeas corpus*. This seems to be the farthest that any case has gone in opposition to the cases of *The City of London*, and *The King* v. *The Dean and Chapter of Trinity College*.

All of the old cases, where the question has been presented, or it has been referred to, hold that a writ of error will not lie on a fine for a contempt, a proceeding for a *procedendo*, a mandamus or a *habeas corpus*. These cases all depend upon the same rule, and are governed by the same principle. The fact that no case can be found in the British reports where a writ of error has been sustained on a judgment in a

*habeas corpus*, is almost conclusive that the jurists of that country regarded the law as being clearly and well settled, that such a writ could not be maintained. And when it is remembered that in that government, individual liberty has at all times and under all reigns, been an object of the greatest solicitude, and their peculiar boast, it would be unaccountable if such a right existed that it had not been invoked in some of the many struggles for its maintenance.

On this side of the Atlantic, however, the same uniformity of decision has not obtained. Yet the current of authority is largely against allowing the writ. In the case of *Ex parte Yates*, 6 Johns. 337, it was held, by a divided court, that the writ could be maintained. Again in the case of *Holmes* v. *Jamison*, 14 Pet. 540, by a bare majority of its members the court announced the same rule. These are the only cases we have been able to find which announce the doctrine, except in courts where the right has been conferred by statutory enactment. It would seem that these decisions were not regarded as satisfactory, as both the congress of the United States and the legislature of New York adopted statutes providing that a writ of error might be prosecuted on such a judgment. And since their adoption, no doubt numerous reported cases may be found from their courts. This legislation would seem to impair the force of the previous adjudications as authority. But, at most, they seem to stand alone and unsupported.

Opposed to these cases are found numerous decisions of the various courts of the Union, as *Russell* v. *Commonwealth*, Penr. & Watts, 82; *Commonwealth* v. *Jones*, 3 Serg. & Rawle, 158; *Bell* v. *The State*, 4 Gill, 301; *Jones* v. *Timberlake*, 6 Rand. 680, note; *Wade* v. *Judge*, 3 Ala. 130; *Steal* v. *Shirley*, 9 Smedes & Marsh, 383; *How* v. *The State*, 9 Mo. 690; *Ex parte Mitchell*, 1 La. Ann. 413; *Weddington* v. *Sloan*, 15 B. Mon. 147; *Ex parte Perkins*, 2 Cal. 424. Thus it is seen that the highest judicial tribunals of eight of the States of the Union have declared that a writ of error will not lie in such a case. These, together with the practice of the British courts,

largely preponderate as authority. When it is considered that this writ is regarded in Great Britain as the bulwark of their liberty, and when we refer to the struggles for its maintenance against usurpation by the crown, it seems to be conclusive, that if such a right existed, either at the common law or under the statute, it would have been asserted by their courts.

But, independent of authority, we are unable, upon principle and reason to admit, that the writ can be allowed until it is authorized by legislation. It is conceded by all, that a writ of error will only lie on a final judgment. It will not lie to review an interlocutory order. At the common law, it would not lie to review a judgment awarding a peremptory mandamus, a *procedendo*, or the denial of a prohibition; for the reason that such judgments were not final.

Our statute, like the British acts, authorizes the Supreme and Circuit Courts, or any judge in vacation, to award the writ, and try all cases of *habeas corpus*, and to discharge, commit or admit the prisoner to bail. But the act does not preclude the party from obtaining another writ, but recognizes the right, only prohibiting a second trial, if it appears from the order remanding the prisoner, that he is committed for an offense adjudged not bailable. In such a case, the prior order is made conclusive, and the prisoner is required to be remanded without further proceedings.

The seventh section of the act declares, that when a prisoner has been discharged under a writ of *habeas corpus*, by the court or a judge in vacation, he shall not be again imprisoned for the same cause, unless he be afterward indicted for the same offense, nor unless by legal order or process of the court where he is bound by recognizance to appear. What shall not be considered the same cause which exempts him from arrest, is declared to be a discharge on account of a defect of process, or any material defect in the commitment in a criminal cause. If, in a civil suit, the party has been discharged for any illegality in the judgment, process, or for a non-observance of the forms of law, the order discharging him shall not

prevent his subsequent arrest when the informalities or defects shall be removed.

It will be observed, that the statute authorizes a subsequent arrest and imprisonment, notwithstanding a former discharge in these several enumerated cases. If the judgment was intended to be final, such a provision would not have been made. And if the judgment is to be regarded as final for one purpose, it should be so regarded for all purposes. If final on the discharge, also for a recommitment by the court or the judge in vacation. If final against one party, why not against the other? If final for some purposes and not for others, it is an anomaly in jurisprudence.

Again, our statute makes no distinction as to the effect of an order made by the court in session and a judge in vacation. If one is final, so is the other. If the parties have a right to prosecute a writ of error from the one, they may from the other, and if so, how may the writ be obtained to the order of a judge in vacation, who is required to keep no record of the proceeding before him? It would seem to be attended with insuperable difficulties.

If the judgment is final, either party may prosecute a writ of error, and, upon an application to this court or either of its members in vacation, if there was error apparent upon the record, a *supersedeas* would be granted. By this means, the party having the prisoner in custody, in many cases could prevent his discharge, until a trial could be had on the errors assigned, and thus frustrate the design of the law, by detaining the party in custody until a trial of the accused was had, and the necessity of the application had ceased to exist. If a writ lies, the parties may preserve the evidence on the hearing by bill of exceptions, and assign errors as in ordinary cases, either to the admission or rejection of evidence, or on the finding of the court. These seem to us to be the consequences resulting from holding that error will lie in this proceeding.

In the case under consideration, by the provisions of the seventh section of the act, the party might be again imprisoned, under a legal writ, if he was discharged for a defect in the

writ under which he was arrested. The same may be said of the judgment. But conceding that the plaintiff has lost his right to hold the body of the prisoner, in execution, for the satisfaction of his judgment, the remedy is with the legislature and not with the courts. The court below had no power to discharge the prisoner, as the judgment and process were sufficient to warrant his detention. The sheriff was not liable for costs, and the court below erred in rendering a judgment against him for their collection, and he has the right to prosecute a writ of error to reverse that judgment, but not to review the decision discharging the prisoner. They are, in effect, if not in fact, two judgments. One on the application for the discharge, under the *habeas corpus*, and the other against the sheriff. The judgment for costs, therefore, is reversed, but the judgment discharging the prisoner, not being subject to review on error, cannot be either reversed or affirmed.

In this opinion, Mr. CHIEF JUSTICE CATON concurred.

*Judgment for costs reversed.*

Separate opinion by Mr. JUSTICE BREESE. This is a writ of error to the Circuit Court of Cook county to review a judgment of that court in a *habeas corpus* case, in which such proceedings were had that the relator was discharged from imprisonment, and costs adjudged against the plaintiff in error, who was the officer having him in custody.

The majority of the court, while they entertain the writ, and reverse the judgment rendered against the plaintiff in error, decide that a writ of error will not lie in a *habeas corpus* case. If this be so, it would seem to me, this writ should have been dismissed.

I cannot, after the most mature consideration, whilst concurring in reversing the judgment, agree with the majority, that a writ of error will not lie. It may be laid down as a principle not to be controverted, that a final judgment of an inferior court is subject to review, by this court, on a writ of error, except in cases where the legislature has otherwise pro-

58

vided.   This writ is a writ of right, and cannot be refused in any civil case.   Whatever may be the rule in a case of *habeas corpus*, before a single judge, not sitting as a court, such rule can have no application to a judgment pronounced by a court of record at one of its regular terms, as this was.

The majority of the court set out with the declaration that, in Great Britain, no case can be found in which it is "intimated" that a writ of error may be maintained on a judgment of a court, or the order of a judge, on the trial of a *habeas corpus*.   We have nothing to do with the decision of a single judge on a *habeas corpus*.   That is a question not now before us.   That no case can be found in which it is "intimated" that a writ of error will not lie on a judgment of a court, on the trial of a *habeas corpus*, is certainly a mistake.   In Queen Anne's time, in the fourth year of her reign, all England was excited by a controversy which arose between the House of Lords and the Commons, growing out of an election of burgesses to serve in parliament for the borough of Aylesbury. One Matthew Ashby commenced an action against William White, and others, the constables of Aylesbury, for not receiving his vote at such election.   The case was tried in the Queen's Bench, and judgment being rendered against him, he sued out a writ of error to the House of Lords, where the judgment was reversed.

The Commons regarded these proceedings as an encroachment on their privilege, and, after much discussion, they not only committed Ashby, but passed sundry resolutions going to a denial of the right of any tribunal to determine any matter relating to the right of the election of their own members. Upon these proceedings, the Lords resolved that Ashby had a legal right to vote; that, as a necessary consequence thereof, and an incident inseparable to that right, he must have a remedy to assert and maintain it; that he pursued the proper remedy, and is supported by the grounds and principles of the ancient common law of England.   And they further resolved, that declaring Ashby guilty of a breach of the privilege of the House of Commons for prosecuting an action against the

constables for not receiving his vote at an election, after he had, in the known and proper method of law, obtained a judgment in parliament for recovery of his damages, is an unprecedented attempt upon the judicature of parliament, and is, in effect, to subject the law of England to the votes of the House of Commons. And the lords further resolve that the deterring electors from prosecuting actions, in the ordinary course of law, when they are deprived of their right of voting, and terrifying attorneys, solicitors, and counselors, and serjeants at law, from soliciting, prosecuting and pleading in such cases, by voting their so doing to be a breach of privilege of the House of Commons, is a manifest assuming a power to control the law, to hinder the course of justice, and subject the property of Englishmen to the arbitrary votes of the House of Commons.

The course taken by the House of Commons had not the effect expected, for before the next session of parliament, not only was execution taken out by Ashby on his judgment, but actions of like nature were brought for John Paty and other inhabitants of Aylesbury for being denied their votes at the same election, of which complaint being made to the House of Commons, they ordered the committal of the attorney and of Paty and the others, for this alleged breach of the privilege of the house, and they were committed to Newgate prison.

The prisoners applied for and obtained a writ of *habeas corpus* out of the Queen's Bench, and three of the judges, GOULD, POWYS and POWELL, held, against HOLT, Ch. J., that the commitment was legal and they were remanded to prison. Paty and Oviat, two of the prisoners, petitioned the queen for a writ of error in order to bring the judgment of the Court of Queen's Bench before her majesty in parliament.

The queen referred this petition to the attorney and solicitor-general, and afterward to all the judges at Serjeant's Inn. Of the twelve judges who met, HOLT, Ch. J., TREVOR, Ch. J., WARD, Ch. B., BLENCOWE, POWYS and TRACY, Justices, were of opinion that the writ of error was a writ of right in this case, and that the queen, *ex debito justitiæ*, ought to grant it; and

NEVILL, POWELL and GOULD, Justices, and BURY, PRICE and SMITH, Barons, held, that the writ was of grace and favor and not of right, but NEVILL, POWELL, GOULD and BURY afterward changed their opinions and agreed with HOLT, Ch. J., and the five others. And they say in their response to the queen, that they give no opinion whether a writ of error lies in the case, because it is proper to be determined in parliament, where the writ of error and record are returned and certified.

The House of Lords thereafter, in an address to her majesty, take up the various propositions contained in the address of the house to the queen, and as to their opinion that no writ of error lies in the case, the lords affirmed, with great assurance, that by their constitution, the commons had no right to determine whether that was so or not, the right of judgment, when a writ of error is brought, is, by law, intrusted to that court to which the writ is directed, and therefore they would say nothing then in an extra-judicial way, and before the proper time, as to that point whether a writ of error brought upon a judgment for remanding prisoners upon a *habeas corpus* can be maintained. Whether the writs of error ought to be granted, or what ought to be done upon them afterward, are very different things. The only matter under her majesty's consideration being, whether in right and practice the petitioners are not entitled to have the writ of error granted. That it is a writ of right in all other cases, except felony and treason, has been affirmed in the law books, is verified by the constant practice, and is the opinion of all your present judges, except Mr. Baron PRICE and Mr. Baron SMITH.

The address concludes in this way:

"We humbly conclude, with acquainting your majesty, that we have been informed by the petition of two of the prisoners, that they have been long delayed, though they have made their application in due manner for writs of error. We are under a necessary obligation, for the sake of justice and asserting the judicature of parliament, to make this humble address to your majesty, that no importunity of the House of Commons, nor any other consideration whatever, may prevail with

your majesty, to suffer a stop to be put to the known course of justice, but that you will be pleased to give effectual orders for the immediate issuing of the writ of error."

To which her majesty the same day returned this answer: "My lords, I should have granted the writ of error desired in this address, but finding an absolute necessity of putting an immediate end to this session, I am sensible there could have been no further proceeding upon that matter." 14 Howell's State Trials, 695 to 887.

The same day the queen prorogued the parliament, which put an end to the matter, but sufficient is shown, that the House of Lords more than "intimated" that a writ of error would lie on a judgment on *habeas corpus*.

It is said, the prorogation was at the instance of the commons, in order to prevent the House of Lords from hearing the cases on a writ of error, which they would have done, seems indeed, a fair inference. These cases are reported at length in 14 State Trials, above cited, and Paty's case more more briefly in 1 Lord Raymond, 1106 and 2 Salkeld, 503.

To show that it is settled in England, the case of *The City of London*, 4 Coke's Rep., 395, is cited. That was a case where one James Wagoner was under arrest for the penalty in a by-law, and on *habeas corpus* brought by him and return thereto, it was objected that the return consisted much in recital, which ought to have been directly and certainly alleged, to which the court answered and resolved, that this is not on a demurrer in law, but a return on a writ of privilege, upon which no issue can be taken or demurrer joined, neither upon our award herein doth any writ of error lie, and, therefore, the return is no other but to inform the court of the truth of the matter in which such a precise certainty is not required as in pleading.

I submit, the question whether or not a writ of error would lie, was not the question before the court. It was the sufficiency of the return to the writ of *habeas corpus*. What was said upon the point not then before the court, was mere *obiter dictum*.

This is the only case the court can find decided by an English Court, in which it was said a writ of error would not lie, and that question not being a point in the case.

The case of *The King* v. *The Dean and Chapter of Trinity College*, 8 Modern, 27, was a case of mandamus, where the court say it is against the nature of a writ of error to lie on any judgment, but in cases where an issue be joined and tried, or when judgment may be had upon demurrer and joinder in demurrer, and, therefore, it will not lie on a judgment for a *procedendo*, nor on the return of a *habeas corpus*.

If this be the test, then it is clear a writ of error will lie in this State, because an issue can be made up and tried on the return, or the return may be demurred to, and this by section 3 of our statute.  Habeas Corpus act, Scates' Comp. 808.

The doctrine in Comyns' Digest is not questioned, that a writ of error will not lie on a *habeas corpus* denied, for the application for the writ may be repeated again and again, and before different judges.

I have given the whole history of the case of *The Queen* v. *Paty*, 2 Salk. 503, the decision in which it seems to me, does not strengthen the court in the conclusion it has reached.

There is no case right on the point to be found in the English books, and I am therefore correct in saying, the question has not been decided in that country.  That the courts of that country have decided that error will not lie to reverse a judgment imposing a fine for a contempt of court, may be so, I have not examined, but this court has decided it will lie. *Stewart* v. *The People*, 3 Scam. 402.

As to the American authorities on the question, cited by the court, I have examined them all, except the case from 5th Alabama, which book is not within my reach.

The case of *Russell* v. *The Commonwealth*, 1 Penn. (Penrose and Watts), 82, was a writ of error to Bedford county to remove the record and proceedings upon a *habeas corpus* which issued to James M. Russell for the body of Charity Bogden.  The cause was submitted without argument, and the writ was quashed, on the ground without assigning any reasons, that no

writ of error would lie to remove a judgment upon a *habeas corpus*. *Commonwealth* v. *Jones*, 3 Serg. & Rawle, 158, was a case in which this question did not arise in any shape. It was a case of the validity of the indentures of an infant apprentice, wherein Mr. Justice DUNCAN, at the close of his opinion, says, "it may be proper to state, that the decision of remanding on *habeas corpus*, is not final. It would be against the policy of our laws, affording as they do so just a protection to the liberty of every citizen, that the opinion of one judge or of one court should be conclusive on the party." He then observes as printed, " As no writ of error will lie, the party has a right before he is finally concluded, to the judgment of this court, the court of last resort." "No" is clearly a misprint for "A," for how could the judgment of the court in the last resort be had, except by writ of error, an appeal not being held to lie in such case.

*Bell* v. *Maryland*, 4 Gill, 301, decides that under this act of 1785, an appeal will not lie from an order of the county court dismissing an application for a *habeas corpus*. The reason is obvious, I think, as the party can apply to another court or judge, until he has exhausted the judicial power in this regard, of the whole State. Baron COMYNS lays it down that it will not lie for a denial of the writ.

*Jones* v. *Timberlake*, 6 Randolph, 680, decides, that on a *habeas corpus* sued out by a person arrested on an escape warrant, if it be proved the justice who issued it was a justice at the time of issuing it, the prisoner ought to be remanded. The note to the case on which the court relies as authority is simly this: "*Note*— The petitioner afterward applied to the Court of Appeals for a writ of error to this judgment, which that court refused." Why it was refused is not stated; probably because the Court of Appeals saw no error in the judgment of the general court, and therefore refused the writ.

The case of *State* v. *Shirly*, 9 Smedes & Marshall, 383, was brought up by appeal, and the court say the appeal must be dismissed; it is not authorized by law. There is no mode of

bringing to this court for revisal the judgment of a judge on a writ of *habeas corpus*, but by means of a *writ of error.*

*How* v. *The State*, 9 Missouri, 690, decides that an appeal will not lie on the order of a Circuit Court remanding a prisoner, for the reason that the order is not final, as the prisoner can make repeated applications for the writ.

*Ex parte Mitchell*, 1 Louisiana Annual, 413, decides an appeal will not lie in such case, as the judgment is not a final one.

*Weddington* v. *Sloan*, 15 B. Monroe, 147, decides only, that under the statute of Kentucky, an *appeal* will not lie in the case of a *habeas corpus.*

*Ex parte Perkins*, 2 California, 430, decides, that under the act of 1850, vesting the power of hearing and determining writs of *habeas corpus* in the judge of every court of record in the State, makes it a mere chamber proceeding, and that the final determination is not that of a court, but the simple order of a judge not appealable from, or subject to review.

These are all the cases cited, and were all cases of appeal, except the case in Penrose and Watts, in which no reason is assigned for the decision of the court.   The Missouri case and the California case, though brought up by appeal, decided against any supervisory power by an appellate court, and are in point.

The court is certainly mistaken when they say, " thus it is seen that the highest tribunals of eight States of the Union, have declared that a *writ of error* cannot be maintained in such a case." Those States have not so decided, as the cases show.   Appeals are allowed by statute, and can be had, in no case, unless so allowed.   Writs of error are writs of right, and cannot be refused in any civil case.   It may be well said, an appeal will not lie in a given case, because there is no statute allowing it.   It cannot be so said of the writ of error.   One is a favor granted by statute, the other a right in all cases, civil and criminal, except in capital cases, and derived from the common law.   They are different modes of bringing cases into this court.  *Bowers* v. *Green*, 1 Scam. 42.

The court also say, that independent of authority, they are unable on principle and reason to admit the writ can be allowed, until it is authorized by the legislature. And the court further say, the writ will not lie at the common law to review a judgment awarding a peremptory mandamus, or *procedendo*, or the denial of a prohibition. Now, it has been expressly decided by the Supreme Court of the United States, in the case of *The Columbian Insurance Co.* v. *Wheelwright et al.*, 7 Wheaton, 534, that error would lie upon the award of a peremptory mandamus. So in the case of *Kendall* v. *The United States*, 12 Peters, 524.

In the case of *Weston et al.* v. *The City Council of Charleston*, 2 id. 449, it was decided that this writ might be brought upon a denial to grant a prohibition.

In the case of *The United States* v. *Booth*, 21 How. 506, a writ of error to the judgment of the Supreme Court of Wisconsin, in a *habeas corpus* case, was entertained by the Supreme Court of the United States, and the judgment of the State court reversed. I find no act of Congress granting this writ in these cases, nor is any referred to by the court. Jurisdiction was entertained, in virtue of their common law powers as a court.

Congress did pass an act in August, 1842, giving to subjects or citizens of a foreign State, who might be in custody in this country, the writ of *habeas corpus* and the right to appeal from the decision of any justice or judge to the Circuit Court of the United States of the proper district, and from the Circuit Court to the Supreme Court. 5 U. S. Stat. at Large, 539. This statute has no application to this case. It leaves our citizens as they were at the common law, with the right to prosecute a writ of error.

Why will not a writ of error lie?

The reason is said to be, that the judgment is not final — it is merely an interlocutory order. Is this so? Is not the judgment in the proceedings on *habeas corpus*, depriving one party of his legal remedy, and subjecting another to a judgment for costs, a final judgment in that case? What element is wanting

59

to make it final? The party bringing the case here, has a final judgment against him for costs, and the court sustains the writ, yet, at the same time, they say a writ of error will not lie from a proceeding on *habeas corpus,* because it is not final. But this court did have a case on *habeas corpus* brought to it by writ of error, and decided it on the merits. It is the case of *The People ex rel. Philmot* v. *Hessing,* 28 Ill. 410.

It will be conceded, that all proceedings of inferior courts, which conclusively affect the rights or property of persons, ought to be subject to the revision or correction of a higher tribunal. The grant of jurisdiction to this court is very comprehensive. It has final and conclusive jurisdiction of all matters of appeal, error or complaints, from the judgments or decrees of any of the Circuit Courts, and from such other inferior courts as may be established by law, in all matters of law and equity wherein the rules of law or principles of equity appear from the files, records or exhibits of any such court, to have been erroneously adjudged and determined. Scates' Comp. 616.

"All matters of law," wherein there shall have been misjudgment or erroneous determination, can be reviewed by this court.

In this case, the investigation was had before the Circuit Court, a regular judgment entered up, and a full record made of the proceedings. That court did all it had the power to do in the case, and recorded its acts. It put an end to the case, so far as it had the power to do, and it must, like all other cases, be subject to the revision of this court by writ of error. A *habeas corpus* is a writ of right; and in a case affecting the liberty of the citizen, and the remedies provided by law for the redress of grievances or the satisfaction of judgment, what good reason has been or can be assigned, why a writ of error should not lie? Is there no judgment in the case? BLACKSTONE says, a judgment is the sentence of the law pronounced by the court on the matter contained in the record. 3 Bl. Com. 395. This is, therefore, a technical and formal judgment, and

the Circuit Court did all that it was in its power to do in the case, and rendered a final judgment.

The case of the *Commonwealth* v. *Jones*, 3 Serg. & Rawle, 158, cited by the court, favors the view I take, at least, so far as the opinion of Mr. Justice Duncan is worthy of regard, and all will admit that it is. He says in that case, "it may be proper to state, that the decision of remanding, on *habeas corpus* is not final. It would be against the policy of our laws, affording, as they do, so just a protection to the liberty of every citizen, that the opinion of one judge, or of one court, should be conclusive on the party."

In the case before us, the validity of the *ca. sa.*, was the only question before the Circuit Court, and that question was definitely settled, for the court adjudged that the arrest was illegal, and the defendant, the sheriff and plaintiff here, was commanded to release the relator from custody, and that the defendant pay the costs of the proceeding, and that the people, on the relation aforesaid, have execution therefor. A bill of exceptions was taken.

If this be not a final judgment in that case it is difficult to perceive what would be such a judgment. All the questions of law presented by the sheriff's return were fully determined. This cannot be denied.

By reversing the judgment, as the court has done, the court has allowed the writ of error in a *habeas corpus* case, and thus furnished authority against its own decision.

But we are not without authority of the highest kind, upon the very point, and the conclusion reached, after the most laborious examination, and able and elaborate arguments, that a writ of error will lie in proceedings on a *habeas corpus*.

It is the case of *Yates* v. *The People*, decided by the Court of Errors of New York, and reported in 6 Johns. 338 to 352. It appears that Yates, who was a master in chancery, had been committed by the chancellor for mal-practice and contempt. A judge of the Supreme Court in vacation, discharged him on *habeas corpus*, and the chancellor again committed him on the same charge. An application was made to the Supreme Court

for a *habeas corpus*, which was denied, and the case taken by writ of error to the Court of Errors, the court of last resort. That court held, that a writ of error would lie from the judgment of the Supreme Court, remanding a prisoner brought before it on *habeas corpus*. Such a decision, directly on the point, is worth more than all the intimations, queries and half-way opinions of the British courts, or of other courts deciding differently, without any or with but slight discussion. The fact that the legislature of New York afterward passed an act allowing the writ of error in such cases, does not detract from the conclusive force of the decision. That was the law of the State, without an act of the legislature, and the act gave it no additional potency.

It is unnecessary to state the arguments of the judges and senators, delivering opinions in that case. Those in favor of the writ, especially the arguments of Senator Clinton, cannot, I think, be read without a conviction that they are the result of calm deliberation, inspired by a sense of justice and by the consciousness of the high duty of the court, to protect the citizen by the full exercise of their constitutional power, in his right to personal liberty.

Another case exactly in point as I conceive, is the case *Ex parte Edward Lafonta*, 2 Robinson's Lou. R. 495. It was an appeal from the District Court of the first district. The case was this: The appellants, Bruce and Hayes, were the special bail in Massachusetts of Lafonta, where he had been arrested on a *ca. sa.*, for debt. Immediately after the execution of the bail bond, Lafonta came to New Orleans. The appellants there obtained a bail piece, on which the sheriff arrested him, to be delivered to his bail in order that they might surrender him in the court of· Massachusetts in their discharge.

Lafonta obtained a writ of *habeas corpus* from the District Court, on which he was discharged. Bruce and Hayes appealed to the Supreme Court, where it was ordered that the judgment discharging him should be reversed, and that he remain in the keeping and custody of the appellants, his bail, and that he pay the costs in both courts. No allusion is made in the case

to any statute of Louisiana, authorizing the appeal, but the case was decided on common law principles. It is a case very much like this, both being arrested on civil process for debt, and both discharged by the court.

There is still another case entitled to the highest consideration, in which, although owing to a decision of the court, the writ of error was dismissed, the strongest arguments by most learned judges can be found in its favor. It is the case of *Holmes* v. *Jennison et al.*, 14 Peters, 540.

The case was briefly this: Holmes having been indicted in Lower Canada for a felony, fled to the State of Vermont. An agent of the Canadian authority came to Vermont to get Holmes into his custody, and for that purpose, applied to Jennison, then governor of that State, for a warrant for his apprehension, which the governor issued and placed in the hands of Starkweather, the other defendant, then sheriff of Washington county, to be executed. Holmes was arrested on the warrant and placed in jail. He petitioned the Supreme Court of Vermont, setting forth the facts, for a writ of *habeas corpus.* The writ was issued, and on the hearing, the motion to discharge the prisoner upon the ground of the insufficiency of the cause alleged for his detention, as being at variance with the provisions of the Constitution of the United States, was denied, and the prisoner remanded, to be delivered to the authority of Canada.

The judgment of the court was in the following words: "Wherefore, after a full hearing of the parties, and all and singular, the premises aforesaid being seen and fully examined, it is adjudged by the court here, that the aforesaid cause of detention and imprisonment of the said George Holmes, is good and sufficient in law, and that he be remanded and held accordingly under the process set forth in the return to this writ of *habeas corpus.*"

Holmes prosecuted a writ of error to the Supreme Court of the United States, under the twenty-fifth section of the judiciary act of 1789.

Chief Justice TANEY delivered the opinion of himself, of Mr. Justice STORY, McLEAN and WAYNE, in which they say the

judgment of the Supreme Court of Vermont was "a final judgment" "in a suit" within the meaning of the act above cited.

In discussing the meaning of the word "final," they refer to the case of *Weston et al.* v. *The City-Council of Charleston*, 2 Peters, 464, which I have before cited for another purpose, and say, "if the word final was applicable to those judgments and decrees only, in which the right was finally decided, and could never again be litigated between the parties, the provisions of the section (25th sec.) would be confined within much narrower limits than the words import, or than congress could have intended. Judgments in actions of ejectment, and decrees in chancery dismissing a bill without prejudice, however deeply they might affect rights protected by the constitution, laws, or treaties of the United States, would not be subject to the revision of this court. A prohibition might issue, restraining a collector from collecting duties; and this court would not revise and correct the judgment. The word 'final' must be understood in the section under consideration, as applying to all judgments and decrees which determine the particular cause." They then proceed to argue that the proceedings before the Supreme Court of Vermont, were "a suit" within the meaning of the act of congress, that the judgment was "final" and, therefore, the plaintiff in error was entitled to have it reëxamined in the Supreme Court by writ of error.

Although the writ of error was dismissed, owing to a division of the court, the argument in its favor is entitled to the highest consideration, and is overpowering, with me.

The gravest questions imaginable may come up on a *habeas corpus*, involving the dearest interests of the citizen, and as Mr. Justice DUNCAN said, in the case of the *Commonwealth* v. *Jones*, 3 Serg. & Rawle, it is against the policy of our laws, affording, as they do, so just a protection to the liberty of every citizen, that the opinion of *one* judge, or of *one* court should be conclusive on the party. A power of review should be lodged somewhere, and under the forms of our government, such power is thought to be safely reposed in the highest judicial tribunal known to its constitution.

It was, in my judgment, the well considered intention of the constitution, to give to the Supreme Court of the State, a controlling power over the decisions of all other courts, which might affect, not only the property rights, but all the rights and interests of the citizen. The protection of personal liberty demands as strong guards as the protection of property, and while it is not denied, a party may pursue his redress in this court, when his rights to property are assailed, is it just, when his liberty is attacked, he should be bound by a single decision?

A system of jurisprudence not recognizing this right to carry a question of personal liberty, dearer to most men than accumulated wealth, to the highest court, for final adjudication, is unworthy a free people, and undeserving the highly-wrought eulogiums so lavishly bestowed upon it in every forum, in essays, and in popular harangues.

But it may be said, this right to a writ of error, is a two-edged weapon, as this case exemplifies. By a writ of error, in favor of the people, or other interested party, the person suing it out, may be kept in confinement until the errors can be heard and determined. That could not be, unless the writ should be made a *supersedeas.* But suppose he is delayed? Is he not bound by the laws, innocent or guilty, and must not every man await the sometimes tardy process of the law? In all judicial proceedings, where any right is pursued, there is necessarily, some delay. It is far better this inconvenience should be suffered, by allowing the writ, than that an innocent person should remain without redress, the victim of arbitrary power, alike implacable and relentless.

A few remarks on the points of the original case.

The petition for the *habeas corpus* is artfully drawn. There is no averment in it, that the petitioner could not speak, and did not understand the English language perfectly well. There is no denial in it, that he was not summoned to appear before the justice of the peace who rendered the judgment, or that he had knowledge of the judgment. There is no denial that he is not the Joseph against whom the judgment was rendered, and the *ca. sa.* was issued. The petition seems

to be founded on the presumed error of the justice in entering of a judgment against him, who was the real party to the judgment, because of some supposed informality or illegality, and on account of which, he seeks, by the writ of *habeas corpus*, to reverse the judgment and procure his discharge from the consequences of it. The decision of the court recites the fact, that he, the petitioner, was the party on whom the summons was served. What, under the circumstances, was it his duty to have done? It was to have appeared and pleaded the misnomer in abatement of the suit, and given his name in full. It cannot be denied, and the relator does not deny, that his name was Joseph; in fact he admits that was his given name, but alleges his family name was Vacaro, and as he was sued by the one, without the addition of the other, he ought to be discharged, and at the same time, he does not deny the justice of the judgment against him. This judgment could be pleaded in bar of another suit for the same cause against Joseph Vacaro.

There was no question made before the Circuit Court, or decided by it, as to the jurisdiction of the justice of the peace, to render the judgment or to issue the *ca. sa.*, or as to the regularity of any of the proceedings before him. The only question was, whether the *ca. sa.*, being against Joseph, could be executed on Joseph Vacaro, who was the party summoned by the name of Joseph, and the real party in the suit.

It is apparent, the judgment rendered by the justice of the peace was not a void judgment. He had unquestioned jurisdiction over the subject matter of the suit, and over the person of the defendant, though sued by a wrong name, or rather by a portion only of his full name, and if, under such circumstances, it was error for the magistrate to render a judgment, the remedy to correct it was by appeal. Upon the writ of *habeas corpus*, the Circuit Court had no power to look beyond the judgment, reëxamine the grounds on which it was rendered, and practically reverse it, for such is the effect if the *ca. sa.*, issued upon it, is held to be a nullity. *Ex parte Watkins*, 3 Peters, 202. Imprisonment, under a judgment, the court say, cannot be unlawful, unless that judgment be an

absolute nullity, and it is not a nullity if the court rendering it had jurisdiction, although it should be erroneous. Id. 203.

The Circuit Court had, therefore, no power to declare either the execution or judgment void. It had no discretion in the case, for, by the clear and unequivocal words of section 3 of the *habeas corpus* act, the petitioner being in custody by virtue of process of a legally constituted court, he could be discharged only for some one of the seven causes therein specified, not one of which existed in this case. Scates' Comp. 808.

In the case of *Kellogg, ex parte*, 6 Verm. 511, COLLAMER, J., in delivering the opinion of the court, said: that matter in abatement, if there be notice to the defendant in fact, is waived if not pleaded, and cannot be assigned for error; and that *habeas corpus* is not a proceeding to set aside an irregular or an erroneous judgment. To discharge the prisoners would deprive the creditor of enforcing his judgment, and at the same time leave the judgment in full force and unreversed. The execution could only be treated as void when the judgment is void. This is never the case when the court has jurisdiction of the subject matter, and the parties, especially if the defendant has had actual and timely notice. *Bell* v. *Maryland*, 4 Gill, 301, cited by the majority, in their opinion, is to the same effect.

The case of *Guinard* v. *Heysinger*, 15 Ill. 288, is in point. The misnomer, there being personal service on the real party, was matter in abatement only.

I am, therefore, of the opinion that a writ of error lies in the case, and that the Circuit Court erred in discharging the relator, and that he ought to be remanded.