STARKS *vs.* THE PEOPLE.

It is always competent for a party to show the relations which exist between a
witness of his adversary and the party against, as well as the one for whom
he is called.
So the party against whom a witness is called is entitled to prove his declara-
tions indicative of hostile feelings towards himself.
Accordingly *held* that a defendant, on the trial of an indictment, might prove that
a witness for the prosecution had said of a particular locality, that it would be
a good place in which to kill the defendant, though the remark was made be-
fore the time of the commission of the alleged offence, and the witness to whom
the declaration was imputed, on his cross-examination, had denied having
made it.
A party is not entitled to give evidence of the general good character of his own
witness, unless the character of the witness has been attacked by witnesses
on the other side.
And it is not enough to warrant proof of good character that the witness had
been discredited by proof contradicting portions of his testimony, and by evi-
dence that he had made declarations hostile to the party against whom he was
called, and in his testimony had denied the making such statements.
A party has a right to impeach the general character of a witness for his adver-
sary, though the testimony which such witness had given related solely to the
general character of another witness.

ERROR to the general sessions of Oswego county. The
plaintiff in error was indicted in the sessions, in June, 1845, for
arson in burning a barn of Ebenezer Perkins at Hannibal, Os-
wego county, on the first day of April, 1845. The defendant
pleaded not guilty, and the trial took place in December, 1845.
E. Perkins was sworn as a witness for the prosecution; and on
cross-examination by the prisoner's counsel he was asked
whether he did not, during the then last winter or spring, when
speaking to one James Dunton, and referring to a certain black
ash swamp, say, "there would be a good place to kill Starks,"
[the prisoner.] The witness said he had not so stated in
words or substance to Dunton or any one else. J. Dunton was
afterwards called on the part of the prisoner, who offered to
prove by him that during the then last winter or spring, before
the burning of the barn, the witness Perkins, in speaking to

Starks *v.* The People.

him of said black ash swamp, did say it would be a good place to kill Starks. The district attorney objected to the evidence so offered, as irrelevant, and because the declaration offered to be proved was made prior to the burning of the barn. The court sustained the objection and excluded the evidence.

M. B. Perkins, another witness for the prosecution, on his cross-examination denied having any recollection of having told one Winchell that he would rather give $500 than have the prisoner get bail. Winchell was called by the prisoner and testified that the witness M. B. Perkins had made a declaration to him to that effect. The prisoner also gave other evidence contradicting some other portions of the testimony of M. B. Perkins. The district attorney then offered to prove that said Perkins' general reputation for morality and truth was good. The prisoner's counsel objected, as no evidence had been given on his part impeaching the general character of that witness. The objection was overruled and the evidence received. The same question was, in effect, made as to two other witnesses for the prosecution.

The prisoner's counsel then offered to show the good moral character, including character for truth, of certain witnesses called and examined on his part, whose testimony was in contradiction to that given by E. & M. B. Perkins on the part of the prosecution. This was objected to by the prosecution and excluded by the court.

One Osborn was sworn and examined as a witness for the prosecution. His testimony related only to the general good character of M. B. Perkins, another witness for the prosecution, and was favorable to the last mentioned witness. On the cross-examination of John McClaughey, a witness for the prosecution, the prisoner's counsel offered to impeach the general character of Osborn for truth, veracity and moral honesty. The district attorney objected and the court sustained the objection. The counsel for the prisoner excepted to each of the rulings of the court before mentioned. Several other questions were raised and decided in the course of the trial. Eventually

the prisoner was found guilty by the jury and was sentenced by the court to imprisonment in a state prison.

*N. Hill, Jun.* for the plaintiff in error.

*R. H. Tyler,* (district attorney,) for the people.

*By the Court,* BEARDSLEY, C. J.    How much, if any thing, the evidence of the witness, Dunton, would have amounted to, is not for us to say, but it was clearly competent and should not have been rejected by the court.    It tended more or less to show ill will or malice on the part of the witness towards the prisoner on trial, and was therefore pertinent and material.    It is always competent to show that a witness is hostile to the party against whom he is called; that he has threatened revenge, or that a quarrel exists between them.    A jury would scrutinize, more closely and doubtingly, the evidence of a hostile than that of an indifferent or friendly witness.    Hence it is always competent to show the relations which exist between the witness and the party against, as well as the one for, whom he was called.    The inquiry is material, as it goes directly to the credit of the witness in the particular case.    (1 *Greenl. Ev.* §§ 449, 450 ; 1 *Stark. Ev.* ed. 1842, *pp.* 189, 190 ; 1 *Phil. Ev.* 272, 273 ; *Cowen & Hill's Notes, pp.* 729, 730, 765 ; *Atwood* v. *Welton,* 7 *Cont.* 70.)

The court also erred in allowing the district attorney to give evidence that his witness, M. B. Perkins, was of good general character for morality and truth, for the reputation of the witness had not been attacked by the defendant.    The only ground on which this evidence can be supposed to have been received is, that the defendant gave some evidence that the witness, on former occasions, had made certain statements which he now denied to have made, and that his testimony was in some respects contradicted by other evidence before the jury.    Granting all this to have been shown by the defendant, so that the truth of the evidence given by the witness was thus drawn in question, it furnished no ground for allowing the

prosecutor to give evidence of the general good character of his own witness. The very point was considered and adjudged by this court, in the late case of *The People* v. *Hulse*, (3 *Hill*, 309.) Without going over the subject here, we refer to the views there expressed by Mr. Justice Bronson, and in which we fully concur.

The district attorney having been allowed to go into evidence that his witnesses were of good character, before it had been attacked on the other side, the defendant offered similar evidence as to the witnesses on his part. This was objected to by the public prosecutor and rejected by the court. We think there was no error in this, although we are quite unable to see upon what principle this evidence was refused by the court after similar evidence on the part of the prosecution had been received.

It was argued that the reputation of the witness Osborn could not be attacked, as he had only been examined on the question of character in regard to another witness. We understand the rule to be that the general character of every witness may be drawn in question by the party against whom he is called, and we are not aware of any such limitation as the one referred to on the argument.

There are several other points presented on this bill of exceptions, some of which, we think, were wrongly decided by the court; but those already stated show that whatever the case really may have been, there was error in the trial and conviction. Without therefore adverting particularly to other points in the case, the judgment must be reversed.

Judgment reversed.