## MICHIGAN CARBON WORKS, RESPONDENT, v. CHARLES H. SCHAD, APPELLANT.

*Evidence — admissions by a defendant, when they are the only positive evidence against him, are to be carefully scrutinized — their weight and effect should be submitted to the jury — so should the credibility of witnesses called by the plaintiff who are in his employment.*

This action was brought by the plaintiff to recover an amount alleged to be due to it from the defendant for goods shipped by it to the defendant, and sold by him as its agent. The answer was a general denial. Upon the trial no direct and positive proof was given as to the quantity of any actual shipment of goods by the plaintiff, or as to any sales thereof made by the defendant, but the plaintiff sought to recover upon the testimony, of two witnesses called by it, relating to admissions made by the defendant that the amount claimed was due from him to the plaintiff. The details of the interview with the defendant, but not the actual language used, were given by the witnesses. One of the witnesses was an agent of the plaintiff and had sold some of the goods to the defendant, and the other was an attorney employed by the plaintiff to collect claims due to it, and the interview, as to which he testified, was had while attempting to collect this particular claim. The defendant requested that he should be allowed to go to the jury upon the question of the nature, extent and meaning of his admissions, and his intent and purpose in making them, and as to the credibility of the plaintiff's witnesses.

*Held,* that the court erred in denying the application and directing a verdict in favor of the plaintiff.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed by the court, and from an order of the trial judge denying a motion for a new trial made upon his minutes.

At the close of the evidence a verdict was directed against the

defendant in the plaintiff's favor for the sum of $1,417.53, to which the defendant's counsel excepted.

*William C. Greene*, for the appellant.

*E. M. & F. M. Ashley*, for the respondent.

BARKER, J.:

The plaintiff, a Michigan corporation, is the manufacturer of fertilizers doing business at Detroit, and on the 24th day of July, 1882, appointed the defendant its agent for Niagara county, this State, for the sale of the same by an instrument in writing, by the terms of which goods were to be shipped to the defendant, who was to receive and sell the same upon commission, collect the proceeds and pay over the same, the title of the property to remain in the plaintiff, the defendant agreeing to be responsible for any loss to the property arising from fire or otherwise. His commissions were stipulated in the agreement. The proofs tended to establish that under this agreement a quantity of goods were shipped to and received by the defendant and sold and some of the money collected. Prior to making this contract a car load of goods had been placed in the hands of the defendant for sale, but there was no direct proof as to the quantity or the terms of the arrangement under which they were delivered. In March, 1883, the account being unsettled, the plaintiff made out a statement of the same and caused it to be presented to the defendant, as testified to by wit. nesses called in the plaintiff's behalf, and on the failure of the defendant to pay over the moneys which were claimed to have been collected by him this action was commenced. There was no direct and positive proof presented by the plaintiff of the quantity of goods delivered to the defendant, the quantity of the same that was sold, or of the amount of money collected on the sales actually made. The plaintiff relied entirely upon the admissions made by the defendant to its attorney and agent at the time the account was presented and a demand made for its adjustment and the payment over of such moneys as he had collected. The account as made out consisted of items of the quantity of goods shipped, the price of the same, the date, and was brought to a balance, in which the plaintiff claimed a balance in its favor of $1,517.53.

The defendant's answer contained a general denial, putting in issue all the allegations in the complaint. The admissions of the defendant as to the quantity of goods received by him, the extent of the sales, the goods on hand unsold, and the amount of money collected on the sales and in his hands were attempted to be established by the plaintiff's own witnesses. After the defendant was in default as alleged, and the account mentioned was made out, it was placed in the hands of Mr. Myers, one of the plaintiff's general attorneys, and not the attorney of record who lived in Cleveland, who called upon the defendant at his place of business for the purpose, as the witness testified, of settling and closing up the matter in controversy and presented to him the account and had conversations with him concerning the matter in dispute. The other witness, Mr. Palmer, who was called by the plaintiff was its salesman and had been in its employ for the period of five years, negotiated the terms of the written contract and as he testified received an order from the defendant for one of the items of goods mentioned in the bill. Neither of these witnesses claimed to have any personal knowledge as to the shipment and receipt of goods by the defendant, or of the quantity sold, or of the sums collected, or as to the accuracy of any item contained in the bill as presented. They were both present, as we understand from their testimony, and gave evidence as to the same interviews and admissions claimed to have been made by the defendant.

Assuming that their evidence is in all respects truthful, and the nature and character of the defendant's admissions are stated by these witnesses substantially in the language used by the witnesses, it was fairly established that the defendant received from the plaintiff the quantity of goods mentioned in the bill and that he had collected and had in his hands unaccounted for the amount of money for which the verdict was directed. Before the court directed the verdict the defendant's counsel requested permission to go to the jury as to the nature, extent and meaning of the defendant's admissions, and the intention and purpose of the defendant in making the same, and upon the question as to the credibility and reliance which should be placed, under the circumstances, upon the evidence given by the defendant's attorney and agent. These requests were denied and the defendant excepted.

Among other things testified to by the witnesses they state that the defendant presented his own books of account and reference was made to the same with a view of ascertaining the true situation of the matters of which he had charge. They also stated that the defendant himself checked off some of the items in the bill presented, but none of the particular items are indicated in their testimony, nor do either of them state that he gives his testimony in the language in which the conversation with the defendant was carried on, and it is manifest, on a perusal of the same, that they did not. The witness Myers, among other things, testified as follows: "I was told by Schad that he had some goods on hand; the amount was not then known; Mr. Schad fixed a time when we would go out to his sheds and inventory the goods on hand; Palmer, Shad and I went out to the sheds, took the inventory and agreed upon the amount of goods on hand, and the goods were surrendered to me that day by Schad; the amount agreed on was $875.74; I then said the amount which you owe us now is $1,517.53; he said that is correct; after we had agreed upon this balance I asked him if he had collected this money and whether it was all paid in; and he said it was not all paid in, and from reference to his books he gave me the amount that was not paid in; that is the amount which he had not collected; he gave us the items of it, and I can't give the exact sum, but it was in the neighborhood of forty dollars that had not been paid in; the rest, he said, had been paid; he said he had turned the unpaid accounts over to his assignee; Schad said the money collected had been used; I think he said there had been some more than forty dollars uncollected, which Mr. Stebbins, his assignee, had collected since they were turned over to him, and that at the time of that conversation there was forty dollars unpaid, and that the amount of money which he had at the time of the assignment had been used; I had two conversations with Schad afterwards; they were repetitions of the above conversations, not as full, and did not refer to the books again; Schad examined the statement which I have here, and the pencil marks thereon were made in his presence." This witness gave further evidence on the same subject, all of which tended to show that the defendant admitted that there was due from him to the plaintiff the amount

for which the verdict was ordered. The witness Palmer did not give his evidence in the same language and phrases as the first witness Myers, but it was in effect substantially the same as to the conversation and admissions claimed to have been made by the defendant.

As the plaintiff relied upon the evidence of these witnesses for the purpose of proving all the facts upon which its alleged cause of action was based, and neither of them had any personal knowledge of the material facts to be established, I am of the opinion that it was for the jury to determine the facts, if any, which were established by the admissions of the defendant in the interviews and conversations related by the witnesses, and that it was error for the court to direct a verdict in the plaintiff's favor. It is a competent way to establish the existence of a material fact in a legal controversy, to prove the admissions, of a party, of the fact sought to be established against him; but such evidence is always received with great caution and scrutiny, and as a general rule it is for the jury to say whether the admission, as made, established to their satisfaction the fact in issue. Mr. Greenleaf, commenting upon this class of evidence, says : " With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature." As to the effect of admissions when proved, he says: " It is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him." (Vol. 1, §§ 200, 201.) For the purpose of determining the particular facts admitted by the defendant, by the body of evidence as given by these witnesses, the same must be scanned, scrutinized, reconciled, the meaning

of words and phrases considered, and all the facts and circumstances under which the conversation took place, must be weighed and reflected upon with a view of determining the particular fact or facts which the defendant did admit. This was the province of the jury and not of the court. It may be that the jury would be justified in finding the defendant was indebted in the sum for which judgment was ordered, and that the evidence would not leave the question in much doubt in the mind of any intelligent and impartial person, nevertheless, as a deduction was to be made from the particular facts stated by the defendant, the question was for the jury.

The other question presented for our consideration relates to the credibility of witnesses, and I am of the opinion, in view of the relation which each of them bore to the plaintiff relative to this particular transaction in dispute and controversy between the plaintiff and the defendant, the defendant had the right to have the question of their credibility submitted to the jury. It is a general rule that when evidence has been given by a disinterested, unimpeached and uncontradicted witness, and there is no intrinsic improbability in the statements made, neither a court or jury can arbitrarily disregard his testimony. (*Newton* v. *Pope*, 1 Cow., 110; *Lomer* v. *Meeker*, 25 N. Y., 361; *Elwood* v. *Western Union Telegraph Co.*, 45 id., 553; *Kavanagh* v. *Wilson*, 70 id., 179.) But this rule is subject to many qualifications.

Whenever it is made to appear that the witness entertains a bias, however slight, towards the party against whom he is called to testify, then the triors, whether a court or a jury, must reflect upon his evidence and determine upon the weight and consideration which should be given to the same. In *Starks* v. *The People* (5 Denio, 106) the rule is stated as follows: " It is always competent to show the relations which exists between the witness and the party against, as well as the one for, whom he was called. The inquiry is material as it goes directly to the credit of the witness in the particular case." That was a criminal case, but the same rule applies in civil actions. (1 Greenl. Ev., §§ 449, 450; 1 Starkies' Ev., 135; *Long* v. *Lamkin*, 9 Cush., 365; *Collins* v. *Stephenson*, 8 Gray, 441.)

It is also competent to prove the social and business relations existing between the witness and the party calling him to the stand, and if it is established that they are such as usually and ordinarily

produce an interest in the mind of the witness in favor of the party calling him on the question in dispute; then it is for the jury to say to what extent, if any, the relationship impairs or destroys the credibility of the witness. In the case now here Myers, one of the witnesses, was the attorney in fact for the plaintiff, having charge of the settlement of the claim after the dispute arose concerning the matter in controversy. It is no different in principle and the rule should be applied with the same force and effect as if he was the attorney of record. It is manifest from the witness' own statement that he was collecting attorney for the plaintiff, and the circumstance that subjects his evidence to criticism and scrutiny is the same as if he were the attorney of record, and in such cases the credibility of a witness' standing in that relation is never withheld from the consideration of the jury where the fact to which he testifies is in dispute. The other witness was plaintiff's traveling salesman and agent, and appointed the defendant as agent and received from him an order for some of the goods mentioned.

In *Kavanagh* v. *Wilson* (*supra*) the court assigned as one of its reasons why the credibility of a witness called by the plaintiff should have been submitted to the consideration of the jury; that he was a son of the plaintiff, engaged in his business, and was thus biased and interested in feeling in favor of the party calling him. Without imputing a want of truthfulness to either of these witnesses we think that their relation to the subject-matter in controversy was, of itself, sufficient to take from the court the right to dispose of the case upon their evidence and to require that the jury should pass upon the weight to be given to their statements. In all essential respects the case is like *Elwood* v. *Western Union Telegraph Company* (45 N. Y., 549); *Day* v. *Stickney* (14 Allen, 261); and the rule laid down in these cases is applicable to this.

For these reasons a new trial should be granted, with costs to abide the event.

SMITH, P. J., and BRADLEY, J., concurred.

Judgment and order reversed and new trial ordered, costs to abide event.