THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. CHARLES E. KEARNEY, APPELLANT.

*Conviction for seduction under promise of marriage — what evidence is sufficient to corroborate the testimony of the female seduced, under section 286 of the Penal Code — the acts making Saturday afternoon a half holiday do not prevent the courts from sitting after twelve o'clock, noon, of that day — evidence is admissible to show the relation existing between a witness and either of the parties.*

Upon this appeal by the defendant from a judgment convicting him of the offense of seducing an unmarried female of previous chaste character, under a promise of marriage, it appeared that on the trial the offense charged was proved by the testimony of the complainant, and that her testimony was supported by that of her father and mother, which tended to show that the defendant, before, after, and at the time of the alleged seduction, was visiting the complainant as her suitor; that he called upon her three or four times a week and visited her evenings; that he wanted her to go to the picnic at which the sexual intercourse was, according to the testimony of the complainant, had, and agreed to meet her at the pier from which the boat started; that he returned home with her that night; that after this he talked with her and her mother of their contemplated mar-

riage; that the time for its celebration was appointed; that it was postponed and another day set; and that he was shown the dress which the complainant proposed to wear at her wedding.

*Held*, that the complainant's testimony was corroborrated, both as to the promise of the marriage and as to the illicit intercourse, sufficiently to satisfy the requirements of section 286 of the Penal Code, providing that no conviction can be had for the offense with which the defendant was charged, upon the testimony of the female seduced, unsupported by other evidence.

The case was submitted to the jury on Saturday, July 9, 1887, at twenty-five minutes past twelve o'clock M. The appellant claimed that this was error, as chapter 289 of 1887, amending chapter 27 of 1875, as amended by chapter 30 of 1881, made Saturday, after twelve o'clock M., a half holiday.

*Held*, that the claim could not be sustained.

That a court was not a public officer within the meaning of that term as used in the said acts, providing that " the days and half days aforesaid shall be considered as the first day of the week, commonly called Sunday, and as public half holidays for all purposes whatsoever, as regards the transaction of business in the public offices of this State, or counties of this State."

That the statute does not prohibit the holding of courts after twelve o'clock M. on Saturday.

On the trial the defendant called his father as a witness, who was permitted on his cross-examination to testify, under the defendant's objection, that he gave $100 to Mr. Costello to give to the overseer of the poor which he testified that he gave to fix the bastardy matter.

*Held*, that the evidence was admissible, as it was always competent for a party to show the relations which exist between a witness and his adversary, and the party against as well as the party for whom he is called.

APPEAL from a judgment of the Court of Sessions of Onondaga county, convicting the defendant of the offense of seduction under promise of marriage, and from orders denying motions for a new trial, in arrest of judgment, and to vacate and set aside the verdict of the jury.

*W. P. Goodelle*, for the appellant.

*Lawrence T. Jones*, for the respondent.

MARTIN, J.:

The Penal Code provides that a person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by fine or imprisonment, or both. But it also provides that no conviction can be had for the offense upon the testimony of the female seduced unsupported by other evidence. (Secs. 284, 286.) It was under this

statute .that the defendant was indicted, tried, convicted and sentenced. On the trial the offense charged was proved by the complainant, who was the principal witness. She in effect testified: That the defendant invited her to accompany him to a place called . Long Branch to attend a picnic, on the 4th of July, 1885; that she went to the lake with a Miss Murray; that they there met the defendant an'd several others and took the boat for their place of destination; that after arriving there, and after having danced, she and the defendant took a walk around the grove alone; that the defendant then asked her to marry him and named the following October as the time when it should take place; that she assented to his offer and promised to become his wife; that the defendant then had sexual intercourse with her; that she was induced to submit to his embraces by reason of his persuasion and seductive acts and her reliance upon his promise to marry her.

The evidence given by the people, which tended to corroborate that of the principal witness, was given by her father and mother. Her mother testified: "I remember the 4th of July, 1885, referred to, the day on which they went to the picnic; I saw Kearney there that day in the forenoon; before that he used to call there regularly on my daughter; he said, 'I want you to hurry up now, and go to the picnic;' my daughter and Katharine Murray went on the street car from where we lived; he said, 'I will go down to the brewery; I will meet you at the pier;' I guess it was about one o'clock when they went to the picnic; it might have been eight oclock when they got home; I have heard Kearney talk to my daughter on the subject of marriage, in my own house in the parlor; he asked her, Mary, when are we going to get married; she said, I don't know, just like that; he asked her when they were going to get married, when it would be settled for them to be married; and so he set about October, some time in October, 1885; she said she would get married to him, so he came .to the house all along; she had her clothes fixed; some time in October, when it came for them to be married, he didn't have no money; I asked him myself what was the matter with him; he said he couldn't get the money; he said, 'I ain't got any money; I will have it against Thanksgiving;' when Thanksgiving came he didn't have any money; they kept company still, and he came to our house all along; I remember about the wedding

dress; Mr. Kearney saw it, he said it was handsome; * * *
Katharine Murray, Jimmy Hogan and Meehan, and Charley Kear-
ney came back with her" the evening after the picnic. Her father
testified: "I know Charley Kearney the defendant; I am the
father of Mary Carroll, I suppose; I have seen the defendant at my ,
house all through the summer of 1885, pretty much; before the
fourth of July he called there three or four times a week; I didn't
keep any track of it; I have often seen them there and have spoken
to him there; he has visited with her there."

An important question presented is whether the evidence of these
witnesses supported the evidence of the principal witness sufficiently
to justify the trial court in submitting the case to the jury. Before
proceeding further it may be well to examine the authorities bearing
upon this question to determine, if we may, to what extent and. as
to what facts the statute requires such a witness to be corroborated.

The case of *Armstrong* v. *The People* (70 N. Y. 38) arose upon
an indictment under chapter 111, Laws 1848, which in all of its
essential particulars was identical with the provisions of the Penal
Code under which the indictment in this case was found. In that
case it was held, that under the provision declaring that a conviction
should not be had upon the testimony of the female seduced, unsup-
ported by other evidence, supporting evidence was only required as
to the promise of marriage and the carnal connection. It was also
held that as to the promise of marriage the provision was satisfied
by proof of circumstances which usually attend an engagement of
marriage. As to the illicit intercourse and the immediate persuasion
and the inducements which led the female to consent, evidence of
opportunities more or less frequent and continued, and that the
relation of the parties were such as to indicate that confidence and
affection for the accused on the part of the female, which rendered
it probable that the act might have been done, were sufficient. And
it was held further that the fact that the prosecutrix in her testi-
mony limited the carnal connection to a single act and specified the
time did not require that the supporting evidence should be confined
to that particular time; if it covered a period including the specified
time it was sufficient to meet the requirements of the statute,
although there was no corroborative evidence as to the particular
act testified to. (See also, *Kenyon* v. *The People*, 26 N. Y., 203;

*Crandall* v. *The People*, 2 Lans., 309; *Boyce* v. *The People*, 55 N. Y., 644.) Thus from an examination of the authorities we find that the supporting evidence need only relate (1.) To the promise of marriage. (2.) To the carnal connection. And that the former may be established by proof of such circumstances as usually attend marriage engagements, the latter, by proof of opportunities and relations of confidence and affection between the parties.

The supporting evidence given by the father and mother of the complainant tends to show that the defendant before, after and at the time of the alleged seduction was visiting the complainant as her suitor; that he called upon her three or four times a week and visited her evenings; that he invited her to go to this picnic, agreed to meet her at the pier; that he returned home with her that night; that after this he talked with her and her mother of their contemplated marriage; that the time for its celebration was appointed; that it was postponed and another day set; that he was shown the dress which the complainant proposed to wear at her prospective wedding.

This synopsis of the supporting evidence shows quite clearly, we think, that the principal witness was corroborated, both as to the promise of marriage and as to the illicit intercourse, in accordance with the requirements of this statute as construed by the courts of this State. We think the corroboration of the principal witness was sufficient to require the submission of the case to the jury.

This case was submitted to the jury on Saturday, July 9, 1887, at twenty-five minutes past 12 oclock M. This the appellant claims was error. His claim is based upon the provisions of chapter 289, Laws 1887, amending chapter 27, Laws 1875, as amended by chapter 30, Laws 1881, which makes Saturday, after 12 o'clock M., a half-holiday. The statute, so far as material to the question here involved, provides that "the days and half-days aforesaid shall be considered as the first day of the week — commonly called Sunday — and as public holidays or half-holidays for all purposes whatsoever as regards the transaction of business in the public offices of this State, or counties of this State. On all other days or half-days, excepting Sundays, such offices shall be kept open for the transaction of business." This provision is limited in its application. It relates only to the transaction of business in the public offices of the

State or counties of the State. The question presented is whether a court is a public office within the intent and meaning of this statute.

It cannot be properly said, we think, that a court is a public office. A court is a tribunal established for the administration of justice. While a judicial officer may be a public officer, still, to speak of a court as a public office would be to give to the term an unusual and extraordinary meaning. The words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use. Giving then, to the words "public offices of the State or counties of this State" their ordinary and familiar signification, they would not include a court. They obviously relate to the buildings or rooms occupied by officers of the State or county who are required to keep public offices for the transaction of their business as such officers. This view is rendered quite manifest by the last sentence of the provision of the statute above quoted "that on all other days or half-days, excepting Sunday, such offices shall be open for the transaction of business." If the claim that a court is a public office within the intent and meaning of this provision be correct, then it must follow that by virtue of the last provision all courts of every grade and character are required to be kept open on all days except Sundays and the days and half-days mentioned in the statute. Surely such was not the intent of the law. This statute properly construed does not, we think, prohibit the holding of courts after 12 o'clock M., on Saturdays.

On the trial the defendant called his father as a witness. On his cross-examination he was permitted to testify, under the defendant's objection, that he gave $100 to Mr. Costello to give to the overseer of the poor. This ruling was excepted to. We think the evidence was admissible. It appeared on the trial that the complainant had a child, and the father of the defendant testified that he gave this $100 to fix the bastardy matter. The witness interrogated was a witness for his son. The people had a right to prove any act showing their relations and the interest of the witness, as bearing upon his credibility. It is always competent for a party to show the relations which exist between a witness and his adversary, and the party against as well as the party for whom he is called. (*Starks* v. *The People*, 5 Den., 106 ; *Newton* v. *Harris*, 6 N. Y., 345.)

There are no other exceptions which require special consideration. There were, we think, no errors committed upon the trial which require or would justify a reversal of the judgment or the granting of a new trial herein.

The judgment and orders appealed from should be affirmed, and the judgment, as affirmed, remitted to the Court of Sessions of Onondaga county, to be carried into effect by that court.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment and order affirmed, and the judgment and proceedings, as affirmed, remitted to the Court of Sessions of Onondaga county, to be carried into effect by that court.