SAMUEL ELDODT, Plaintiff in Error, v. TERRITORY
OF NEW MEXICO, ex rel., J. H. VAUGHN, Defend-
ant in Error.

### SYLLABUS BY THE COURT.

1. PUBLIC OFFICER—RIGHT TO POSSESSION OF BOOKS AND OTHER
PROPERTY—MANDAMUS.—One who possesses *prima facie* title to
an office, may compel delivery to himself of the books, papers, seal
and other property, insignia and paraphernalia of such office, by a
proceeding in mandamus; and the question of the 'actual or ulti-
mate title to the office may not be raised in such proceeding, but
must be reserved for an appropriate proceeding brought directly for
the purpose.
     Conklin v. Cunningham, 7 N. M. 445, followed.

2. PUBLIC OFFICER—APPOINTMENT BY GOVERNOR—PRESUMPTION ARIS-
ING THEREFROM.—A strong, *prima facie* presumption is indulged in
favor of the legality and regularity of the acts of the Executive;
and, where it appears that the Governor has undertaken to appoint
to an office which, under a certain state of facts, he is empowered
to fill, it will be presumed, in the first instance, that the requisite
facts existed at the date of the appointment, and that the appoint-
ment was regular and valid.
     Following Conklin v. Cunningham, supra.

3. PUBLIC OFFICER—APPOINTMENT BY GOVERNOR—APPOINTEE'S PRIMA
FACIE TITLE AND RIGHT TO POSSESSION OF BELONGINGS IN OFFICE—
MANDAMUS.—On March 2, 1897, E was appointed Treasurer of
New Mexico, by the Governor, by and with the advice and consent
of the legislative council, to hold office for two years and until his
successor should be appointed.   On June 23, 1899, (the Legislature
for that year having adjourned, without the confirmation by the
council of any nominee to the said office), V was appointed and
commissioned by the Governor to be Territorial Treasurer.   V
then having qualified in the form prescribed by statute, and E hav-
ing, upon demand, refused to deliver to V the books, papers, seal,
insignia and paraphernalia of the office in question.   *Held*: that
V was, *prima facie*, Treasurer of New Mexico, and entitled to the
immediate possession of the aforesaid belongings, and appurte-

nances of the office, and that mandamus against E was a proper remedy whereby to vest such possession in V.

Following Conklin v. Cunningham, supra.

*Error* to the District Court of Santa Fe County, First Judicial District. Affirmed.

Statement of the case by the court.

On July 6, 1899, J. H. Vaughn, the relator, filed in the district court for Santa Fe county a petition, alleging his appointment, on June 23, 1899, by the Governor of New Mexico, to the office of Territorial Treasurer, and his due qualification, and praying for an alternative writ of mandamus against Samuel Eldodt, the respondent, requiring him to surrender to the relator all the insignia and paraphernalia of the office of treasurer, then in Eldodt's possession. Thereupon the alternative writ issued, and was as follows, omitting formal portions:

"The Territory of New Mexico, to Samuel Eldodt, Greeting: Whereas, our said court has been given to understand, upon the information of J. H. Vaughn, that he, the said Vaughn, was, on the 23d day of June, 1899, duly appointed and commissioned by the Governor of the Territory of New Mexico, as treasurer of said Territory, and that the said Vaughn duly took and filed the oath of office required by law and gave his bond as required by law, which bond was approved by the Governor of the Territory of New Mexico, and filed with secretary of the Territory, as required by law, on the 28th of June, 1899, whereby he fully and duly qualified himself to act as such treasurer, and as such was entitled to the custody and possession of the books, papers, moneys, seal, safes, bonds and other insignia and paraphernalia of the said office of treasurer of the Territory of New Mexico, and that on the sixth day of July, 1899, the said Vaughn demanded of you, then being the person in charge of such insignia and paraphernalia of the office of treasurer, that you deliver and turn over the

same to him, the said Vaughn, as treasurer; to do which
you then and there declined and refused, but retained and
still retain the exclusive possession thereof in your custody
and control, and unlawfully and wrongfully refuse to de-
liver the same, or any part thereof, to the said Vaughn,
the lawfully commissioned and qualified treasurer of said
Territory, whereby he is unable to discharge his official
duties as treasurer in any respect, and the public business
is embarrassed and hindered, and that he is without any
plain, adequate and speedy remedy in the ordinary course
of law; Now, therefore, we ...........:., do command you
.........., that immediately upon receipt of this writ you
deliver and turn over to the said Vaughn as treasurer of
the Territory of New Mexico all the books, papers, moneys,
seals, safes, bonds, and other insignia and paraphernalia
belonging or pertaining to the said office of treasurer of
the Territory of New Mexico; or that you show cause
before this court at the chambers of the judge in the court-
house at ten o'clock a. m., on the eleventh day of July, 1899,
why you have not done so," etc.

On July 11, 1899, the respondent filed an answer or
return to the writ, of great length, wherein he denied speci-
fically and generally the several allegations of the writ.
This return also contained various allegations, in both nega-
tive and affirmative form, the substance and object of which
were to avoid the allegations of the alternative writ upon
the ground that, the respondent having been duly created
Treasurer of New Mexico, in March, 1897, upon nomina-
tion and appointment of the Governor by and with the
advice and consent of the legislative council, to hold office
for two years and until his successor should be appointed,
and being alive, sui juris, and entirely capable of filling the
office, and never having resigned or been removed there-
from, but, on the contrary, being still in exclusive posses-
sion thereof, rightfully, and the relator never having been
nominated to the council by the Governor, that official was
without power to confer the office in question upon the

relator, as he had attempted to do. In other words, the purport of these allegations was to deny the power of the Governor to appoint the relator, under the circumstances, and to assert the rightful possession and title of the office to be still exclusively in the respondent. Finally, the return excepted to the legal sufficiency of the averments of the writ. Upon motion of the relator, the court made an order striking out and quashing the greater part of the return, permitting only such portions as traversed the allegations of the writ touching the appointment and qualification of the relator, to stand, the motion being sustained (to quote the language of the order) " in so far as the answer and return denies the right of the governor to appoint the relator to the office of treasurer, and asserts the title to the office in the respondent, and his right as such officer to retain and hold possession of the insignia and paraphernalia of said office." To this ruling the respondent excepted. A motion by the respondent that the issues raised by the pleadings be submitted to a jury was overruled, and the cause came on for hearing before the court. The relator introduced in evidence a commission issued and signed by the Governor, under the seal of the Territory, and countersigned by the secretary, dated June 23, 1899, appointing the relator, J. H. Vaughn, treasurer of the Territory of New Mexico; a certificate of the secretary of the Territory, dated June 28, 1899, certifying to the appointment and commissioning of the relator, to his having taken and filed his official oath, and given a bond to the Territory as required by law, and to the approval of such bond by the Governor and the filing thereof in the secretary's office; and a copy of the said bond, certified by the secretary. Lastly, the relator put in evidence a written demand upon the respondent, in substance requiring the latter to turn over to the former the office of treasurer and its appurtenances and belongings, upon which document was written a statement, signed, "Samuel Eldodt, Treasurer of the Territory of New Mexico," acknowledging service of the demand and refusing compliance therewith.

To the introduction of these several documents the respondent objected and excepted. The respondent then offered evidence to sustain the several affirmative allegations of his return concerning his own appointment, qualification, etc., all of which was excluded, over his exception, and the court gave judgment, finding the facts to be as stated in the alternative writ, and adjudging the relator to be "prima facie treasurer of said Territory, and as such, entitled to the immediate possession of the insignia, paraphernalia, books, furniture and other articles pertaining to said office." Motions for a new trial and in arrest of judgment having been overruled, the peremptory writ issued, July 14, 1899, and, in compliance with the command thereof, the respondent gave over everything appertaining to the office of Treasurer to the relator.

T. B. CATRON AND N. B. LAUGHLIN for plaintiff in error.

E. L. BARTLETT, Solicitor-General, for defendant in error.

CRUMPACKER, J.—Where one has received an appointment to a public office, from the authority invested with power to make such an appointment, and has duly qualified in accordance with statutory requirements, the law will presume, in the first instance, that the appointment was legal, and that the appointee is the rightful incumbent of the office designated in the appointment; and it will, upon his application, assist him to the possession of the insignia, paraphernalia, and everything appertaining to the office. The functions of the writ in such cases are narrow, but they are of vast importance in the orderly administration of government; and it is in this very narrowness that the peculiar power and efficacy of the remedy are founded. There must be some means afforded by the law whereby officials, legally created and qualified, may be enabled to enter, without

PUBLIC officer: appointment by governor: presumption arising therefrom.

delay upon the performance of the duties which the law re-
quires, and the welfare of society demands that they ful-
fill; otherwise, the course of public admin-

PUPLIC officer: istration must be constantly obstructed,
right to posses-
sion of books and its regularity and usefulness greatly
and other prop-
erty: manda- impaired. It is, therefore, the established
mus.
rule, in this jurisdiction, that mandamus lies
to assist to the possession of the insignia,
and appurtenances of an office one who shows a clear, prima
facie right to it, and that the only question proper to be
raised in the proceeding is the question whether a sufficient
showing of a prima facie right has or has not been made.
The question of the actual, or ultimate, title is not an issue
in the case, and no rival claimant may be permitted to delay
the relief sought by raising that issue. Conklin v. Cunning-
ham, 7 N. M. 445. If it be argued that this rule, whicn
forbids a full consideration of the legal rights of the respec-
tive parties, and refuses to go behind the prima facie show-
ing adduced by the relator, may sometimes work injustice,
by ejecting from office one who is actually and lawfully in
possession of it, and inducting into his place another whose
title thereto is defective and illusory, the answer is plain;
the object of the rule is, solely, to secure the systematic
and orderly administration of government, and not to ad-
just disputes of individuals. In the great majority of cases,
it is actually true that he who exhibits the prima facie right
has also the legal title to the office, and that his opponent
is an usurper. In some cases, this is not true; and yet, even
here, the general rule must be adhered to, though it work
temporary individual hardship; for, were it to be departed
from in one case, it must be ignored in all; the special value
of the proceeding by mandamus—its rapidity—would be
lost; the relief by mandamus and quo warranto would be-
come, in all practical aspects the same; and there would be
no agency known to the law whereby in a grave and critical
emergency, the implements, paraphernalia and property of a
public office could be speedily delivered over to the lawful

incumbent.   Such being the principles applicable to the case at bar, the question first presented to this court for determination is, were the facts, as alleged in the alternative writ and as found by the court below, sufficient to establish in the relator a prima facie right to the insignia and appurtenances of the office of Territorial treasurer? The court below found, as a matter of fact, "that the said relator, J. H. Vaughn, was commissioned by the Governor of the Territory of New Mexico, as treasurer of the Territory of New Mexico, on the 23d day of June, 1899, and that said Vaughn as such treasurer took the oath of office prescribed by law therefor, and filed the same in the office of the secretary of the Territory as required by law; that the said Vaughn also made and executed his bond to the Territory of New Mexico in the sum of four hundred thousand dollars, as required by law, which bond, with the sureties thereon, was approved by the Governor of the Territory of New Mexico, and also filed in the office of the secretary of said territory as required by law."   Such being the facts, it is clear that the relator was prima facie treasurer of New Mexico, if the governor was invested with legal power to make him such.   Conklin v. Cunningham, supra.

It is earnestly and ably contended by counsel for the plaintiff in error, that, the office involved in this controversy being a territorial office, the power of the Governor to fill it by appointment without the advice and consent of the Territorial council and during a recess of the council, is, by section 8 of the Organic Act of 1850, and section 1858 of the Revised Statutes of the United States, limited to cases of death or resignation, and that under no circumstances has the Governor power to remove the treasurer and to appoint his successor.   Several decisions of this court, besides numerous other authorities, are cited in support of this contention.   The question thus raised is one, however, which we do not feel called upon to decide in the case at bar.   Section 1858, R. S. U. S., is as follows:

"In any of the territories, whenever a vacancy hap-

pens from resignation, or death, during the recess of the legislative council, in any office which by the organic act of any territory, is to be filled by appointment of the governor, by and with the advice and consent of the council, the governor shall fill such vacancy by granting a commission which shall expire at the end of the next session of the legislative council."

There are, then, at least two contingencies, the happening of either of which empowers the Governor to fill the offices of treasurer during a recess of the council; one of the death of the incumbent, the other is his resignation. Admitting, *argumenti gratia,* the force of the suggestion that the respondent could not be presumed to be dead in this case, it does not follow that, for the purposes of this proceeding, he could not be presumed to have resigned. The facts that he had refused to vacate the office upon the demand of the relator, and that he thereafter persisted in such refusal, do not exclude the possibility that his resignation had been tendered to and accepted by the Governor before the new appointment was made. It must be borne in mind that we have to deal with a strict and technical rule established for the public protection—a rule that is general and not to be disregarded to suit particular instances. The presumption in favor of the legality and regularity of the acts of the Executive is among the strongest known to the law. Conklin vs. Cunningham, supra. It appearing that the Governor had undertaken to appoint to the office, and there being one possible contingency (we do not say that there were not more) in which he might lawfully make the appointment, the court must presume, prima facie, that that contingency existed when the appointment was made; and to permit the introduction of one word of testimony to rebut this presumption would be to open the door to the whole question of title and abolish the rule which we have above attempted to elucidate. When the allegations of the alter-

PUBLIC officer: appointment by governor: appointees prima facie title and right of possession of belongings in office: mandamus.

native writ are sufficient to show a prima facie right to the office in the relator, there is no recourse for the respondent but to traverse and contradict them. Conklin v. Cunningham, supra. Were this a proceeding in the nature of a quo warranto, we should be governed by quite different principles; for that proceeding, (as remarked by Bronson, J., in People v. Vail, 2 Wend. 12), "reaches beyond those evidences of title which are conclusive for every other purpose, and inquires into and ascertains the abstract question of right." But the evidence of title referred to, of which a commission in proper form, issued by a competent appointing power, is one, are conclusive for every purpose, except when directly assailed in the special mode provided by law. Such a commission may not be attacked collaterally in a proceeding like the present, the prime and only object of which is to deliver the insignia and belongings of an office to the person prima facie entitled. The act of the Governor in appointing to office, like the act of a canvassing board in issuing a certificate of election, is judicial, or quasi judicial in character, and where the appointment is within the scope of the gubernatorial power, may be reviewed only in some appropriate proceeding brought for the purpose. Wood v. Peake, 8 Johns, 69; Wildy v. Washburn, 16 id. 49; The People ex rel v. Seaman, 5 Denio, 109. Wood v. Peake, supra, was an action of trespass, brought against Wood, for the seizure of horses belonging to the plaintiff. The defendant justified the seizure under an execution and an appointment of himself to be one of the constables of the county by three justices of the peace, who had acted under a statute conferring upon them the power to make such an appointment in case any constable elected by the town should refuse to serve, and his successor should not be chosen at a special town meeting within fifteen days after such refusal. Defendants warrant of appointment stated, as the ground of its issuance, that one Laurence, one of the constables of the county, had for more than fifteen days refused to serve in his office, and that the town had

not filled the vacancy. The plaintiff proved that the said Laurence had not refused to serve as constable, as recited by the justices, and obtained a judgment in the court below. The Supreme Court, upon appeal, held that the admission of this evidence of the plaintiff was error, and in reversing the judgment said, (p. 71):

"This appointment is a judicial act, for the justices must first determine and adjudge that there is a vacancy in the office, and that the town has neglected to fill it. It is not traversable in such a collateral action. The appointment remains valid until it is set aside or quashed in the regular course upon certiorari. If two justices should appoint him (the constable) it would be a case in which no jurisdiction existed, and the appointment would be null and void. The distinction in the books is between the cases where the authority (of the constable) proceeds from a source having jurisdiction over the subject matter, and from one that does not; the ministerial officer can justify in the one case and not in the other."

In People v. Seaman, supra, which was a quo warranto proceeding to determine election to office, the same court remarked (p. 112): "It was held in Wood v. Peake (8 John. Rep. 69) sanctioned by Wildy v. Washburn (16 id., 49) that such appointments by justices were judicial acts, which were not to be questioned in any collateral proceeding between individuals. This is sound doctrine and is equally applicable to the decision of a board of canvassers declaring the results of an election to office." In fact, we incline to the opinion that an appointment may often involve much more of the judicial element than does the act of adding up election returns, which is "a mere mechanical, or rather, mathematical, duty," as observed by the court in People v. Head, 25 Ill. 290, or, "a simple matter of arithmetic," as remarked in Morgan v. Quackenbach, 22 Barb. 79. See generally: High on Ex. Legal Remedies, sections 73-75; Corwell v. Lambert, 10 Minn. 369; Comm. v. Athern, 3 Mass. 286; Re Strong petitioner, 20 Pick. 495; Ewing v.

Turner, 35 Pac. Rep. 951; State ex rel. v. Churchill, 15 Minn. 455; State ex rel. v. Sherwood, 15 Minn. 221; People v. Head, 25 Ill. 287.

It follows that the action of the court below in quashing those portions of the respondent's return which alleged the possession and title of the office to be in him and denied the power of the Governor to make the appointment of the relator, and in excluding the evidence offered by the respondent in support of those allegations was proper.

As to the assignment of error based upon the overruling of the respondent's motion for a trial by jury, we are constrained to the conclusion that the action of the court below must be sustained. The same point was made without avail before this court, under circumstances almost identical in this respect with those of the case at bar. Conklin v. Cunningham, supra. "The determination of the facts by a jury in a mandamus case is not necessarily preliminary to a valid judgment." In re Delgado, 140 U. S. 586, 588.

There being no error in the record, the judgment of the court below is affirmed.

Mills, C. J., and Parker, J., concur.

---

[841.   May 3, 1900.]